Cleo **HALL**

v.

**ST. HELENA PARISH SHERIFF'S DEPARTMENT, Duncan Bridges, individually and in his capacity as Sheriff of St. Helena Parish, David Lea, individually and as deputy sheriff of St. Helena Parish, Alton Clark, Jr. individually and in his capacity as deputy sheriff of St. Helena Parish, St. Helena Parish Police Jury, the Board of Administrators of the St. Helena Parish Hospital, David Adcock, in his capacity as Director of the St. Helena Parish Hospital.**

**Civ. A. No. 83–200–A.**

United States District Court,
M.D. Louisiana.

July 28, 1987.

J. Michael Lejeune, Labranche & Lejeune, Baton Rouge, La., for plaintiff.

Ben W. Lightfoot, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

### 1. Facts

On Saturday, February 20, 1982, plaintiff, Cleo Hall, and Fabian Scott, nineteen year old Negro men who resided in or near Greensburg, Louisiana, were returning home from a job hunting trip to Houston, Texas. They were traveling in plaintiff's 1982 Ford automobile. Both had found employment on a construction job due to start in Houston in about a week. They left Houston fairly early in the morning and alternated driving. On the way, each drank "a couple of beers" and Hall, at least, also drank "some vodka."

Hall and Scott arrived safely in Greensburg in the early afternoon and made a stop at "the malt shop," where they returned a borrowed camera and visited with

Mary McCoy and Linda Hurst, neither of whom smelled alcohol on them or noticed anything unusual about either of them.

Somewhere near the hour of 4:00 p.m., Hall and Scott drove north from Greensburg on Louisiana Highway 43 for the purpose of delivering Scott to his home. Hall was driving and as he attempted to make a left turn into a side road, the vehicle went into the roadside ditch. Neither occupant of the vehicle was injured and the vehicle was not significantly damaged—it was still operable.

A passing motorist reported the accident to the St. Helena Parish sheriff's office. Hall and Scott, with the aid of passers-by, were attempting to get the vehicle out of the ditch when Deputy Alton D. Clark, Jr., Caucasian, arrived to investigate the accident.

Clark testified that he smelled alcohol on the breath of both Hall and Scott and that he, after viewing Hall's driver's license, ordered both to get into and stay in the rear seat of the sheriff's vehicle. Clark testified that he intended to obtain a blood alcohol reading on Hall in order to determine whether he would charge him with operating a vehicle while under the influence of alcoholic beverages. Clark was unsure as to his reason for arresting Scott. Neither Hall nor Scott was informed that he was under arrest or why he was being detained. The accident report indicates that Hall was issued a citation for reckless operation of a vehicle in violation of LSA–R.S. 14:99.

In ten or fifteen minutes, Deputy David Lea, Caucasian, arrived to assist Clark at the scene. Both deputies were acquainted with both young men, who were still seated in the rear of Clark's vehicle. Clark and Lea had both heard a report that a short time before the accident, a "white lady" had been almost run off the road by another vehicle on Highway 43. Lea ascertained from Clark that Hall was the driver of the Hall vehicle and then approached the Clark vehicle where approximately the following colloquy took place (all the words are not necessarily exact but I find as a fact that the tone is accurate):

Lea: "Boy, were you driving that car?"

Hall: "Yes, I was."

Lea: "Why did you run that white lady off the road back there?"

Hall: "I didn't run no white lady off the road."

Lea: "Boy, I ought to beat your ass."

Hall: "If you do, I'll take you to court."

Lea: "Get your black ass out of that car."

As Hall opened the door and put one foot on the ground prior to leaving the vehicle, Lea began hitting him with his fists. After several blows, Hall hit Lea back. Lea stumbled back and drew his pistol which he first pointed at Hall and then used to pistol whip him around the head. Lea hit Hall repeatedly with the barrel of the pistol and after a number of blows, Hall collapsed on the highway in a bloody heap. Lea then proceeded to kick Hall with his booted foot. Hall apparently lost consciousness and an ambulance was summoned. When it arrived, Lea would not permit the attendants to pick Hall up but insisted that Hall get up without assistance.

Hall was taken to the St. Helena Parish Hospital where five lacerations in the temple area on the left side of his head were noted. The lacerations were cleaned and debridged and three lacerations required sutures, a total of seven stitches. Hall was then taken to the parish jail where, shortly thereafter, he fainted and he was then returned to the hospital. Hall remained in the hospital until February 23, 1982, primarily for observation and testing. He was administered pain medication during his stay. Hall complained, in addition to the injuries to his head, of pain in the jaw and left ribs where Lea had kicked him. Skull x-rays disclosed that the skull was not fractured and other x-rays established that there were no bones broken. A brain scan established that there was no brain damage. Dr. J.W. Varnado testified that Hall suffered no permanent injury. Hall claims that he still has headaches and that there is a "knot" in his jaw. During Hall's stay in the hospital, several blood samples were taken from him and, according to the testimony of a forensic scientist at Hall's

state court trial, (see Exhibit D–2) laboratory testing produced results of ".15" and ".14." No explanation of these results were presented to this court.

Dr. Varnado's bill was $100. No evidence was offered as to any other medical expense incurred by Hall.

When Hall was returned to the parish jail from the hospital he found that he was facing a great many charges. Although the evidence offered to this court is sketchy as to precisely what charges were lodged, it seems to be undisputed that they included, simple battery (LSA–R.S. 14:35), reckless driving (LSA–R.S. 14:99), DWI (LSA–R.S. 14:98), resisting an officer (LSA–R.S. 14:108) and public intimidation (LSA–R.S. 14:122). Again, the evidence presented to this court is sketchy but it seems to be undisputed that Hall was placed on trial in state court and that he was convicted of at least public intimidation, although he was apparently found not guilty of DWI. Plaintiff testified that he was convicted of public intimidation "and something else" and that he was sentenced to one year in jail, a fine and to pay the costs of prosecution in the amount of $3,500. Hall further testified that he was later arrested for not paying the costs. No further evidence was offered on this point.

Made defendants in this action are deputies Clark and Lea and Sheriff Duncan Bridges.

This case was held open following the trial in order that plaintiff might obtain the deposition of Sheriff Duncan Bridges. That effort failed, apparently because of the sheriff's health, but the parties have stipulated that if Sheriff Bridges had testified, "he would admit to the following":

(a) Duncan Bridges and the St. Helena Parish Sheriff's Department failed to provide any training to Officer David Lee concerning when to use force and the amount of force to be used on a suspect.

(b) That Officer David Lee had no post recruit training in this area.

(c) After David Lee was found guilty in federal court of violating Mrs. Rena Day's civil rights, Sheriff Bridges failed to discipline, suspend or reprimand Officer Lee or to investigate his actions.

(d) Almost immediately after the plaintiff's arrest, a group of concerned black citizens came to Sheriff Bridges concerning complaints they had about the manner in which the plaintiff was arrested. Sheriff Bridges spoke to the group, but made no further inquiries or investigations concerning the incident.

(e) St. Helena Parish Sheriff's Department at the time of this incident, did not have a policy or did not convey a policy to the deputys of how to handle an arrestee if the arrestee resisted.

There is no evidence that Sheriff Bridges participated in or was even aware of the beating which Lea administered to Hall or that the beating was a result of Lea's implementation of any policy established by the sheriff.

Deputies Clark and Lea were both acting under color of state law in the performance of their official duties at the time of Hall's beating on February 20, 1982.

### 2. Conclusions of Law

This court has jurisdiction under 28 U.S.C. § 1343(a)(3), since this is an action brought under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights and privileges secured by the Constitution of the United States. Plaintiff also asserts pendent state law claims under Louisiana law.

Plaintiff claims that his arrest by Clark was illegal because no probable cause existed. The ultimate outcome of the prosecution of state court charges against plaintiff is basically irrelevant to the existence of probable cause. It is well settled that in § 1983 cases, if an arrest is effected for which the police officer had reasonable cause to arrest on any related statutory provision, an acquittal of the offense charged does not vitiate probable cause for the arrest. *Trejo v. Perez,* 693 F.2d 482 (5th Cir.1982). Accordingly, if Clark had probable cause to arrest Hall for any charge, prosecuted or not, the initial arrest was lawful.

Deputy Clark had before him a vehicle in the roadside ditch which had left the roadway while the driver was making a left turn in broad daylight in dry weather. Deputy Clark concluded in the accident report that the vehicle was traveling too fast to safely make the turn. The driver smelled of alcohol and there were beer cans and a vodka bottle in the vehicle. These facts are sufficient to justify the initial arrest of Hall for reckless driving, for operation of the vehicle while under the influence of alcohol, or for violation of LSA–R.S. 32:64 which generally prohibits operation of a vehicle at a speed "greater than is reasonable and prudent under the conditions and potential hazards then existing." Thus, Hall's initial arrest by Clark was based upon probable cause and was lawful.

Although the initial arrest be lawful, the Fourteenth Amendment shields the person arrested from post-arrest brutality, "inspired by malice rather than merely careless or unwise excess of zeal so that it amount(s) to an abuse of official power that shocks the conscience." *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981); see also *Williams v. Kelley,* 624 F.2d 695 (5th Cir.1980); *Clemmons v. Greggs,* 509 F.2d 1338 (5th Cir.1975).

Here, Lea's deliberate, malicious beating of Hall was completely unwarranted. Hall was seated peacefully in the rear of the vehicle where Clark had instructed him to remain. He was unarmed; he posed no threat of harm to anyone; he posed no threat of imminent attempt to escape. To attack a peacefully secured arrested person is unconscionable. To repeatedly strike an unarmed man in the head with the barrel of a pistol is to invite a skull fracture or other serious injury. Lea clearly violated Hall's Fourteenth Amendment right to be secure in his person and Lea is liable to Hall under 42 U.S.C. § 1983. Lea is also liable under general principles of Louisiana tort law for his conduct.

The civil rights claim against Clark is more difficult. Although Clark clearly falsely arrested Scott, the passenger, Scott is not a party to this action and this court has found that Clark's initial arrest of Hall was lawful. Clark has varied his testimony from time to time, both as to what he saw and heard as well as to what happened. There is no evidence, however, that Clark participated in the pistol whipping of Hall, that he was aware of Lea's intentions, or that Clark could have prevented or stopped the beating. Clark's actions (or inactions) simply do not rise to that excess of zeal which shocks the conscience and constitutes a violation of 42 U.S.C. § 1983. Accordingly, there will be no recovery against Clark under § 1983. Moreover, there is no evidence that would support a state law negligence recovery against Clark.

Plaintiff insists that the sheriff must be held liable under § 1983 because of his failure to provide training to Deputy Lea "concerning when to use force and the amount of force to be used on a suspect" (see stipulation), and his failure to investigate the incident involving plaintiff's injury. (see stipulation).

A state supervisory official cannot be held for the actions of a subordinate under § 1983 solely on the basis of vicarious liability. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Barksdale v. King,* 699 F.2d 744 (5th Cir.1983).

This is not a case where a law enforcement officer was guilty of using excessive force in the course of subduing a person that he was attempting to arrest. Here their arrest had already been effected before Lea arrived at the scene and the person arrested was peacefully seated in the rear of the police vehicle. No adult (and few children) ought to require training that it is wrong to attack without provocation a person already arrested. Lea's egregious conduct in this case was his and his alone. There is no evidence to support a finding that Sheriff Bridges is liable to Hall for failure to train Lea not to attack unarmed arrestees.

There is no evidence in this record that the sheriff ordered the beating of Hall or that it was administered pursuant to any custom, practice or policy instituted by the sheriff. There being no personal or policy involvement of the sheriff, his "failure to

investigate" Lea following the beating cannot impose § 1983 liability upon him. Liability under § 1983 requires personal involvement of the defendant, either by action or preincident approval of a custom or policy. *Howell v. Tanner,* 650 F.2d 610 (5th Cir.1981); *Watson v. Interstate Fire & Cas. Co.,* 611 F.2d 120 (5th Cir.1980); *Baskin v. Parker,* 602 F.2d 1205 (5th Cir. 1979) (Per Curiam).

Thus, this record does not support § 1983 liability of Sheriff Bridges.

■ The result is different, however, under the pendent state law claims. Under Louisiana law, a parish sheriff is liable in his official, but not personal, capacity as an employer of a deputy, for the deputy's torts in the course and scope of employment. Louisiana Civil Code art. 2320; *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669 (La.1981). Although Sheriff Bridges is not liable under § 1983, he is liable under general principles of Louisiana law, in his official capacity, for Lea's tort.

■ As noted earlier, the medical evidence is that Hill suffered no permanent injury or disability from Lea's beating. He was rendered unconscious and some blows with the pistol were severe. He was in the hospital for three days, he received medication for pain and he did suffer headaches and soreness for some time after his release from the hospital. Hall has proved $100 as the fee of the attending physician and, while the hospital records were received in evidence, no proof of the cost of his hospital stay was offered to the court. Consequently, Hall has proved special damages only in the amount of $100.

Hall is also entitled to an award of compensatory damages in the amount of $5,000 for his physical and mental pain and suffering and the physical injury inflicted upon him by Lea. *Johnston v. Lucas,* 786 F.2d 1254 (5th Cir.1986).

Accordingly, there will be judgment in favor of plaintiff in the amount of $5,100 against Lea under 42 U.S.C. § 1983 and against Sheriff Bridges in his official capacity in solido with Lea under Louisiana law.

■ Punitive damages are allowed in appropriate cases under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *McCulloch v. Glasgow,* 620 F.2d 47 (5th Cir.1980). Punitive damages, as distinct from compensatory damages, are awarded, "with the specific purpose of deterring or punishing violations of constitutional rights." *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978).

■ Lea's unwarranted, deliberate and malicious beating of an unarmed and peaceful arrestee demands both punishment and that an example be made so as to deter other law enforcement officers who might be tempted to deprive people of their constitutional protections.

This is not the first case in which this court has found that Deputy Lea violated the constitutional rights of a citizen by an unprovoked and armed attack. See *Mrs. Rena Day v. David Lea, et al,* Civil Action 81–827 of the docket of this court.

Punitive damages will be awarded against Lea in the amount of $100,000. That amount has a sound ring to it and it is sufficient both to punish Lea for his transgression and to attract the attention of others who might be similarly tempted and perhaps to deter them from similar conduct.

■ Plaintiff is also entitled to an award for attorney's fees under 42 U.S.C. § 1988 and counsel has submitted an itemization of time spent on the case totalling $115.75 hours, to which no exception has been taken by defendants. Counsel suggests that $85 per hour would be appropriate and that attorney's fees in the amount of $9,838.75 should be awarded in this case.

This case was neither complex nor difficult. The trial was one day. Counsel's post-trial brief was not very helpful to the court. Without detailing all the so-called "factors" of *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1977) (query: What is the status of *Johnson* after the Supreme Court's decision in *Pennsylvania v. Delaware Citizens Council,* — U.S.

——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)?), suffice it to say that a reasonable fee for counsel in this case is $75 per hour and that a reasonable number of hours productively devoted to this case could not exceed 75. Again, without detailing all the details, the court has noted particularly that counsel's time sheets reveal some 112 "telephone conferences" with co-counsel, or a total of 28 hours conferring with co-counsel about the case. The court considers that to be excessive discussion. This court concludes that the sum of $5,625 is an ample fee for services performed by counsel and that will be the amount awarded against Lea under 42 U.S.C. § 1988. Attorney's fees are not allowed under Louisiana law in tort cases.

In post-trial brief, counsel for plaintiff has invited the court to award plaintiff damages because of the "false charges" lodged against him by Lea in an effort to punish and silence plaintiff as well as for the "additional punitive measures ... taken in the sentence and fine aspect of plaintiff's criminal case," because a "simple one car accident ... was escalated by DEPUTY LEA into a major tragedy in plaintiff's life, resulting in plaintiff being physically injured and humiliated to suffer incarceration, trial, conviction of a felony, economic hardship." Neither plaintiff's pleadings nor the pretrial order in this case contain any attack or challenge to plaintiff's state court conviction and there is no evidence as to what state court remedies, if any, plaintiff has pursued. While the line of jurisprudence exemplified by *Battieste v. City of Baton Rouge*, 732 F.2d 439 (5th Cir. 1984) might permit a challenge to plaintiff's state court conviction via a § 1983 action, there is absolutely no evidence in this record upon which a federal challenge could be mounted. Accordingly, this case is limited to the post arrest personal injuries inflicted upon plaintiff by Deputy Lea.

Judgment will be entered accordingly.