Christopher James **MURPHY**,
Plaintiff–Appellant,

v.

Mark **KELLAR**, et al., Defendants–
Appellees.

No. 91–2682
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1992.

identify any of the officers involved. Murphy now appeals that dismissal. Finding that discovery may enable Murphy to adequately identify the officers he alleges attacked him, we reverse and remand.

Before POLITZ, KING, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Proceeding pro se and in forma pauperis, Murphy filed an action under 42 U.S.C. § 1983 alleging harassment, retaliatory acts, and assault while imprisoned at the Harris County Jail. More specifically, Murphy alleges that he was assaulted on January 17, 1987 by deputies and again on August 17, 1987 by inmates and deputies. Murphy believes that these assaults, along with other "punishments," were in retaliation for his filing numerous grievances within the jail. After conducting an evidentiary hearing, the district court dismissed Murphy's action as frivolous on the grounds that Murphy could not adequately

I.

Murphy contends that, without cause and as a result of filing numerous grievances within the jail, the following events transpired: (i) an assault by deputies on January 17, 1987;[1] (ii) an assault by inmates and deputies on August 17, 1987 that required Murphy to get five stitches in his head;[2] (iii) disciplinary proceedings brought on (a) August 19, 1986, (b) May 2, 1987, (c) May 9, 1987, and (d) September 22, 1987, in which the hearing committees included officers who had participated in the January 17 and August 17 incidents; (iv) "administrative segregation" imposed on August 19, 1987; (v) the loss of television and other privileges on an undated occasion; and (vi) generally poor and abusive treatment due to labeling among personnel within the prison system.[3]

1. Murphy's account of this incident is as follows:

> On or about January 17, 1987, at approximately 3:30 a.m. numerous Harris county clothed deputies without their name tags and in disguise, i.e., some of them wore inmate's county jail clothes, pretextually invaded 11A–1 jail quadrant with their menace and ransacked the living area, and arbitrarily, capriciously and maliciously motivated to unduly confiscate my legal properties which included one (1) penal code law book. When I requested to speak with the supervisor who had authorized the unreasonable intrusive search and seizure, I was physically grabbed and violently thrown to the floor, and the deputies became vicious and beginned to kick and strike me an unknown period of time. I was manhandled to a standing position, thereafter I was violently rushed to the multi purpose area, and slammed against the wall so hard until I lost my sense of balance and my nose beginned to bleed, my vision was blurr and head pain. The officers made me lie flat on the floor, and they snatched my county jail clothing off. Later, the other inmates were placed inside of the multi purpose room and made to place their face down flat on the table, and told not to move or look. I was finally able to learn one of the deputy's name, known as Dupree, and a Reddish hair Caucasian, both whom was hostile and aggressive unprovoked. Also, upon the best of my

knowledge based on my recollection. Sgt. Lata was presence and approved of the assaultive incident.

Record on Appeal at 12, Christopher James Murphy v. Mark Kellar, No. 91–2682 (5th Cir. filed June 27, 1991) ("Record").

2. In Murphy's own words,

> On 08–17–87 I was assaulted by three prisoners. That resulted in treatment of (5) stitches at Ben Taub, by Dr. Hogg. Later, that is during the morning, numerous unknown deputies maliciously coerced legal matters that was confidential with my appointed counsel from me, when I was being taken to the 176th Judicial Court. When I returned from court on the same date and day, approximately 8 or more deputies entered 7D6 section, and excessive use of force was implemented in retaliation because I had attempted to obtain the deputies names and had reported the incident to ranking staff. My personal property was intentionally destroyed by one known deputy as Mr. Gray.

Record at 14.

3. See Record at 11:

> Upon information and belief, Sergeant J.M. Whiteley, Deputies R. Palomo, Clanton, Russell, Ferguson stated that a confidential code has been assigned to my name saying "Murphy threaten deputies", which was explained

Murphy filed his original complaint on April 14, 1988. Following a magistrate's directive to file a more definite statement regarding his allegations, Murphy added that prison officials used excessive force against him on January 17 and August 17, 1987. The district court treated these new allegations as amendments to Murphy's original complaint.

 Pursuant to the holding in *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985), the court conducted an evidentiary hearing. Finding that Murphy could not adequately identify the names of the individuals directly involved in the underlying incidents, nor explain the involvement of the named defendants other than to say that defendant Harper refused to remove defendant Coons from the hearing committee, the district court dismissed Murphy's action. Although that dismissal was facially without prejudice[4] the court overlooked the fact that the statute of limitations makes it effectively a dismissal with prejudice.[5]

## II.

 The district court's reasons for dismissing Murphy's action are unequivocal:

> to mean that deputies would automatically dislike me and treat me harsher and have animosity toward me. Inter alia, I was further informed that this was only practice to harass me because I am labeled as a "writ writer."

4. The court expressly suggested that "Murphy can refile his complaint if he is able to ascertain the names of the individuals who were directly involved in the incidents of which he complains."

5. Section 1983 is a federal statute without a prescribed federal limitations period. To determine the length of the statute of limitations in section 1983 cases, federal courts therefore reach down and borrow the forum state's general personal injury limitations period. *See Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989). However, while *the limitations period is calculated according to* state law, federal law still determines the standard governing the accrual of a cause of action brought under section 1983.˙ According to that standard, "the time for accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (citations omitted).

"Because Murphy was unable to specify which defendants participated in which actions that allegedly violated his constitutional rights, this complaint will be dismissed without prejudice."[6] The court delivered this decision with sound authority for the principle that a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant, and dismissed the case as "frivolous" pursuant to 28 U.S.C. § 1915(d).[7]

The Supreme Court has defined "frivolous" for our purposes: "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks any arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) (where plaintiff brought a complaint pursuant to 42 U.S.C. § 1983, holding that complaint filed in forma pauperis is not automatically frivolous within meaning of § 1915(d) because it fails to state claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure). Conscious that the overall objective of section 1915 is "to assure equality of consideration for all litigants[,]"[8] courts must apply subsection d

> Murphy alleges that the assaults constituting the basis for his section 1983 action took place in January and August of 1987. Since the Texas statute of limitations governing Murphy's section 1983 action is two years (*see* Tex.Civ.Prac. & Rem. Code § 16.003(a) (Vernon 1986)), the time by which Murphy must file his lawsuit has now passed, and the dismissal of the action originally timely filed is effectively a dismissal with prejudice.

6. Record at 77.

7. *See id.:*
> It is necessary to specify the personal involvement of each defendant in a cause of action under § 1983. *Thompson v. Steele,* 705 [709] F.2d 381 (5th Cir.1983). A plaintiff cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory. *Howard v. Fortenberry,* 723 F.2d 1206 (5th Cir.1984). There must be an affirmative link between the incident and some act by the defendant. *Rizzo v. Goods,* 423 U.S. 362 [96 S.Ct. 598, 46 L.Ed.2d 561] (1976).

8. *Coppedge v. United States,* 369 U.S. 438, 447, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962); *see also Neitzke,* 109 S.Ct. at 1831, *citing Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 342–43,

with caution.[9]

Murphy may not have identified his assailants adequately to ultimately prevail on his section 1983 claim, but the defendants are not completely faceless: in his response to the district court's order for a more definite statement, Murphy alleged that one of the officers involved in the January 17 beating was a deputy "known as Dupree," and one (perhaps the same) was a Caucasian with reddish hair;[10] Murphy also alleged that a "Sergeant Lata" was present and approved of the beating.[11] Moreover, Murphy offers a plausible explanation for his inability to readily identify those he accuses—that they were "without their name tags and in disguise, i.e., some of them wore inmate's county jail clothes."[12] Murphy also alleges that he attempted to more decisively identify the defendants and was punished for his efforts.[13]

It is conceivable that, if he were allowed to conduct discovery, Murphy would be able to adequately identify at least one of the officers allegedly involved in each of the beatings—namely "Gray," "Dupree," and/or "Sgt. Lata." The information that would enable Murphy to identify his alleged attackers—e.g., duty rosters and personnel records—may be readily obtainable. To provide Murphy with the means to adequately identify his attackers[14] and conclusively resolve this issue, we therefore reverse and remand and direct the district court to allow Murphy to conduct discovery.

### III.

Whether or not Murphy can adequately identify the prison officers who allegedly assaulted him can only be determined conclusively if Murphy is given the opportunity to conduct discovery. Accordingly, we REVERSE AND REMAND.

---

69 S.Ct. 85, 90–91, 93 L.Ed. 43 (1948) (purpose of section 1915 is to "ensure that indigent litigants have meaningful access to the federal courts").

**9.** The purpose of subsection d is discussed in *Neitzke*, 109 S.Ct. at 1831:

Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. To prevent such abusive or captious litigation, § 1915(d) authorizes federal courts to dismiss a claim filed *in forma pauperis* "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

**10.** Record at 13.

**11.** *Id.; see supra* note 1.

**12.** Record at 12.

**13.** *See supra* note 2; *see also* Appellant's Brief at 2 (5th Cir. filed Jul. 2, 1991): "Plaintiff was unable to identify the alleged deputies because they wore orange, amber, green and other various colors of coverall without visible name tags."

**14.** This court may base a decision to appoint counsel on many factors:

including [i] the type and complexity of the case; [ii] the petitioner's ability adequately to present and investigate his case; [iii] the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and [iv] the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination."

*Cooper v. Sheriff, Lubbock County, Texas,* 929 F.2d 1078, 1084 (5th Cir.1991), quoting *Ulmer v. Chancellor,* 691 F.2d 209, 213 (5th Cir.1982). In light of factors ii and iii above—namely that (ii) Murphy is a prisoner and those he is trying to identify are prison officials, and (iii) competent discovery would allow the court to efficiently and conclusively determine whether Murphy is able to adequately identify his alleged attackers, that is, whether this case should be dismissed as frivolous or go forward—we also direct the district court to *consider* appointing counsel to help Murphy identify his assailants.