David JONES

v.

ST. TAMMANY PARISH JAIL, et al.

No. CIV. A. 96–3737.

United States District Court,
E.D. Louisiana.

May 8, 1998.

D. Douglas Howard, Jr., Howard, Laudumiey, New Orleans, LA, for Plaintiff.

Matthew Chenevert, Berrigan, Litchfield, Schonekas & Mann, New Orleans, LA, R. Bradley Lewis, Talley, Anthony, Hughes & Knight, LLC, Mandeville, LA, for Defendants.

## ORDER AND REASONS

MENTZ, District Judge.

Plaintiff David Jones brought this lawsuit for damages under federal civil rights laws 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 1988 and Louisiana negligence law. His suit is based on alleged failures to provide adequate medical care and unsafe conditions at the St. Tammany Parish Jail where he was a housed for three weeks in October, 1996 as a pre-trial detainee. Jones sued St. Tammany Parish Sheriff Rodney J. Strain, Warden E.T. Mongovan,[1] Captain Gregory Longino, Prison Guard James Doe, the St. Tammany Parish Jail, the Parish of St. Tammany, and ABC Insurance Company. Jones sued the individual defendants in both their individual and official capacities. Jones did not sue any of the medical personnel who were involved in the matters at issue.

Before the court are two essentially identical motions to dismiss the complaint under Rule 12(b)(6) for failure to state a claim under § 1983, or alternatively for summary judgment under Rule 56. The defendants contend that there is no diversity jurisdiction over the state law claims. They also seek dismissal of the fictitious defendants and the St. Tammany Parish Jail under Rule 12(b)(4) for insufficiency of process. One motion was filed on behalf of defendants Strain, Longino, and Hunter; the other was filed on behalf of the Parish of St. Tammany.

At the time of his arrest on October 4, 1996, Jones was 57 years old and disabled from a prior injury to his back. Jones was

---

1. Mongovan retired before the incidents in question and was replaced by Warden Laron Hunter. When officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. Fed.R.Civ.P. 25(d)(1). Plaintiff has not sought to substitute Hunter. Accordingly, plaintiff has a claim against Warden Hunter only in his official capacity by operation of Rule 25(d)(1).

assigned to the top bunk in his dorm which had no ladder. On October 18, 1996, Jones fell from the top bunk and sustained several serious injuries, including a fractured leg in three places, tendon and ligament damage to his forearm, a partially severed finger, a fractured thumb, broken ribs, and a concussion. He was treated at Charity Hospital of New Orleans, where they sewed his finger back on and placed him in a full leg cast up to his hip and an arm cast. Two days later he was returned to the jail. On October 25, 1996, he suffered another fall when his crutches slipped out from under him.

Jones claims that the defendants are liable to him because they ignored his repeated requests to be assigned a bottom bunk, despite awareness of his infirmities. He further alleges that his injured hand, arm, and ribs prevented him from safely walking with crutches, but that his repeated requests for a wheelchair were ignored. Jones blames his second fall on the defendants' refusal to provide him a wheelchair combined with water leakage on the bathroom floor. He alleges that he was not given a wheelchair because the jail had only one. He alleges that the prison officials refused to make any accommodation for his incapacitated condition, ignored his request for plastic wrap to place over his cast in the shower which resulted him not being able to bathe until his release from jail one week later, made him stand in the mess line and carry his tray while on crutches with a broken arm, and failed to change his linens. He claims that the prison officials delayed coming to his aid after he fell the second time and at first refused to give him medical treatment. He also alleges that the defendants failed to give him his pain medication as prescribed.

## I. *Jurisdiction*

Plaintiff originally alleged in his complaint that he was a resident of Louisiana. He later was permitted over the defendants' objection to amend his complaint to assert that he is a citizen of California.

■ An allegation of residency is not sufficient to establish citizenship. Citizenship, not residency, is the test for establishing diversity jurisdiction. 28 U.S.C. § 1332(a)(1). A person is a citizen of a state

for diversity purposes if he is domiciled within that state and is a citizen of the United States. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996). A person's domicile for citizenship purposes may be different from his place of residence. Determining a litigant's domicile requires that the court address a variety of factors, not just residence. *Id.* at 251.

■ Diversity jurisdiction is determined at the time the action is filed. *See, e.g., Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991). Jurisdiction is unaffected by subsequent changes in the citizenship of the parties. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

■ At the time of his arrest, Jones was traveling by Greyhound bus from his home state of California through Louisiana on his way to Florida to catch a plane to the Bahamas for a vacation. He was arrested in St. Tammany Parish, Louisiana because he was involved in an altercation with another passenger. The evidence shows that at the time of his arrest he had no intention of remaining in Louisiana any longer than was necessary for the Greyhound bus to drive through the state. Jones filed this suit seven months later. At that time, he had recently pleaded guilty to his criminal charges, and he was living in the New Orleans area because of his injuries.

Jones currently resides in Metairie, Louisiana. With the exception of this lawsuit, all of his affairs are handled out of California. His disability checks are issued and deposited into a bank account in California. Jones has no driver's license. Jones' deposition testimony is that he does not intend to remain in Louisiana.

Even though Jones currently resides in Louisiana, the Court finds that at the time suit was filed Jones was a citizen of California for purposes of diversity jurisdiction.

As Jones' citizenship is diverse from all defendants in this case and the amount in controversy requirement is satisfied, the court finds that it has diversity jurisdiction

over the claims in this case. *See* 28 U.S.C. § 1332(a).

This court has both federal question jurisdiction over the federal claims and diversity jurisdiction over the state law claims.

## II. *Fictitious Defendants*

The defendants in this action include Prison Guard James Doe and ABC Insurance Company. Jones used the fictitious name James Doe and alternatively, John Doe, to refer to the unknown prison guard from whom he ·allegedly requested a lower bunk assignment and a wheelchair. He also included ABC Insurance Company apparently in the event that a policy of liability insurance existed to cover the acts and omissions at issue in the case.

■ Fictitious defendants "are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34, 36 (E.D.Pa.1990), *aff'd,* 946 F.2d 202 (3d Cir.1991). If, after discovery, plaintiff is still unable to name the fictitious defendants, the claims against them should be dismissed. *Id.* at 37.

■ The period for discovery has concluded. Since Jones has not attempted a substitution of real parties, it appears that he has not ascertained the identities of these parties. The fictitious defendants remain parties to this action unless they are dismissed. *See Howell v. Tribune Entertainment Co.,* 106 F.3d 215 (7th Cir.1997) ("in the federal judicial system a party becomes a defendant not when he is served but when the complaint against him is filed"); Fed.R.Civ.P. 3. Jones has not attempted to serve these defendants. Rule 4(m) allows the court to dismiss a party which has not been served within 120 days of filing the complaint. Rule 21 of the Federal Rules of Civil Procedure allows this Court to drop parties on "its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. Accordingly, the claims against Prison Guard James Doe and ABC Insurance Company

will be dismissed under Rules 12(b)(5).[2] The dismissal is without prejudice should the identity of these parties subsequently become available.

## III. *Motions for Rule 12(b)(6) Dismissal*

When matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion is converted into a motion for summary judgment. Fed.R.Civ.P. 12(b)(6). As the parties have submitted numerous exhibits, including affidavits and deposition testimony which the court has considered, the remaining issues raised in these motions will be addressed under the standard for summary judgment set forth in Rule 56.

## IV. *Motions for Summary Judgment*

### A. *Section 1983*

#### 1. *Legal Standard for Liability under Section 1983*

The elements of a claim under 42 U.S.C. § 1983 are: (1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law. *See* 42 U.S.C. § 1983; *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

■ A jail official's treatment of a pretrial detainee is governed by substantive protections of the Due Process Clause of the Fourteenth Amendment. This constitutional right protects the detainee's right to be free from punishment prior to an adjudication of guilt. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). Violation of an inmate's liberty interest in bodily integrity by denying him basic human needs such as reasonable medical care, personal safety, and sanitation can amount to punishment. *Partridge v. Two Unknown Police Officers of the City of Houston,* 791 F.2d 1182, 1186 (5th Cir.1986). The

---

**2.** Rule 12(b)(5) provides for dismissal of a claim if service of process was not timely effected in accordance with Rule 4. The defendants' request for dismissal under Rule 12(b)(4) in this case was

inappropriate. Rule 12(b)(4) is used to dismiss claims that deal with defects in the form of summons.

Cruel and Unusual Punishment Clause of the Eight Amendment applies to convicted prisoners and therefore is not applicable in this case. *See Bell,* 441 U.S. at 535 n. 16, 99 S.Ct. 1861.

To determine the appropriate standard to apply in analyzing constitutional challenges by pretrial detainees, the court must determine whether the constitutional challenge is an attack on a condition of confinement or an episodic act or omission. *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996). A condition of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* If the alleged harm is a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *Id.,* at 645.

In condition cases, the harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997). In contrast, a episodic case is shown where an actor is interposed between the detainee and the policy or practice of the local governmental entity that permitted the harm. *Id.*

▆▆▆▆ In cases involving general conditions of confinement, the assumption is that the practice was intentional, and therefore, the inquiry is whether the practice in question was "reasonably related to a legitimate governmental purpose." *Hare,* 74 F.3d at 640. In an episodic act or omission case, the detainee must establish that the officials had actual, subjective knowledge of a substantial risk of serious harm but responded with deliberate indifference to that risk. *Id.* at 643, 650. Negligence can never be the basis for a due process claim. *Id.* at 646.

Jones alleged facts challenging both episodic acts of individual deputies as well as conditions of confinement. In light of these standards, the liability of each defendant under § 1983 is addressed below.

### 2. *Individual Liability of Captain Gregory Longino*

▆▆▆▆ Individual liability under § 1983 must rest on facts reflecting the defendant's personal participation or involvement in the alleged wrong, either by action or approval of custom or policy. *Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir.1992); *Jacquez v. Procunier,* 801 F.2d 789, 793 (5th Cir.1986). Jones presented no evidence that Longino was personally involved in any of the alleged violations except the request for a wheelchair and for plastic wrap to put around Jones' casts so that he could shower. Thus, Longino cannot be held liable for Jones' claims arising from the assignment to an upper bunk, any delay in medical treatment, any missed medicine, having to stand in line for food, dirty linens, or failure to train or supervise.

On the claims related to the wheelchair and the plastic wrap, Jones has alleged violations of a clearly established constitutional right by Longino. Count II, ¶ 40; *See Hare v. City of Corinth,* 135 F.3d 320, 325 (5th Cir.1998). In addition to alleging that Longino was deliberately indifferent to Jones' serious medical needs in violation of the due process clause, Jones specifically alleged that he made repeated verbal and written requests to Longino for a wheelchair, and that none was provided. He further alleged that Longino ignored his requests for plastic wrap for his cast, which prevented him from bathing for a week and resulted in the cast having to be replaced when he was released because it was so filthy. *See Johnson v. Hardin County,* 908 F.2d 1280, 1284 (6th Cir.1990).

▆▆▆▆ Government officials who perform discretionary functions are entitled to qualified immunity shielding them from individual liability as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person in the defendant's position would have known. *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The applicable standard for examining qualified immunity is one of objective legal reasonableness in light of the rights of the parties involved. *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984); *Harlow,* 457 U.S. at 819, 102 S.Ct. at

2739. Claims of immunity are thus to be analyzed by whether a reasonable official in the defendant's position could have believed that his conduct was lawful in light of the clearly established law and the information he possessed. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040.

▮ Qualified immunity may be established as a matter of law. *Hare,* 135 F.3d at 326–28. If there are issues of fact as to whether it was objectively reasonable for the defendant to believe that his conduct did not violate that law, then the jury must address that question. *See Gutierrez v. City of San Antonio,* 139 F.3d 441, 449 (5th Cir.1998); *White v. Walker,* 950 F.2d 972, 976 (5th Cir.1991).

A pre-trial detainee's constitutional right to minimally adequate care and treatment is not a novel proposition. At the time of plaintiff's arrest on October 4, 1996, it was clearly established as a minimum standard that a jail official violates a pre-trial detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee. *See e.g., Hare,* 135 F.3d at 326–28; *Partridge,* 791 F.2d at 1187. Also, it was clearly established that a due process violation occurs if a pretrial detainee is subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose. *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874; *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hare,* 135 F.3d at 326–28. *See also Casey v. Lewis,* 834 F.Supp. 1569, 1581 (D.Ariz.1993)(citing *LaFaut v. Smith,* 834 F.2d 389, 392–94 (4th Cir.1987); *Ruiz v. Estelle,* 503 F.Supp. 1265, 1345 (S.D.Tex.1980), *aff'd in part and rev'd in part,* 679 F.2d 1115 (5th Cir.1982), *amended in part, vacated in part,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983)(disabled inmates must be provided with physical accommodations necessary because of their disabilities, including adequate toilet and shower facilities, as well as wheelchairs and other mobility aids); *Johnson v. Hardin Co.,* 908 F.2d 1280, 1284 (6th Cir.1990)) (prison official's denial of plastic wrap and crutches to prisoner with fractures to both legs held

sufficient to amount to deliberate indifference to serious medical needs). Thus, if Longino's actions, considered in light of these clearly established laws, were objectively reasonable, then he is entitled to qualified immunity.

#### a. Denial of Wheelchair

▮ It is undisputed that Longino told Jones that he would try to get him a wheelchair, that he relayed the request to the medical personnel, and that he advised Jones that obtaining a wheelchair depended on the medical personal's assessment of his need for it. The plaintiff's uncontroverted testimony is that he was not provided a wheelchair because the jail had only one. There is no evidence that beyond relaying the request, Longino was in a position to act meaningfully regarding the wheelchair. The court finds that these facts establish the objective reasonableness of Longino's conduct as a matter of law and therefore, he is entitled to qualified immunity on this claim.

#### b. Denial of Plastic Wrap for Cast

▮ Jones testified in deposition that he asked Longino for plastic wrap, and Longino indicated that he would get it for him. This testimony is not controverted. Certainly, Longino was aware that Jones had a full cast on his leg and his arm and would need plastic wrap in order to shower. The normal procedure at the jail is to furnish inmates with plastic wrap to cover a cast when showering. Longino's affidavit states that he is unaware that Jones was not given any plastic wrap. There is no evidence that Longino was aware that Jones was not able to bathe. Considering these facts and the clearly established deliberate indifference standard, the court finds as a matter of law that Longino could have believed his conduct was lawful. Longino is therefore immune from suit on this claim.

#### 3. *Individual Capacity Liability of Sheriff Strain and Warden Mongovan*

▮ Plaintiff has failed to show that defendants Strain and Mongovan participated in, directed, or had knowledge of the alleged unconstitutional conduct. There is no vicari-

ous liability under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir.1987) (citing *Harvey v. Andrist,* 754 F.2d 569, 572 (5th Cir.), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985)). Accordingly, the court will dismiss the plaintiff's claims under § 1983 against these defendants in their individual capacities.

#### 4. *Official Capacity Claim Against Warden Mongovan*

Warden Hunter as successor to Warden Mongovan automatically assumed Warden Mongovan's official capacity role. Because there has been no actual substitution, the court will dismiss the official capacity claim against Warden Mongovan.

#### 5. *St. Tammany Parish Jail*

As the parties agree that St. Tammany Parish Jail is not an entity, but a building, said defendant will be dismissed with prejudice.

#### 6. *St. Tammany Parish*

 Respondeat superior is not a basis for liability under section 1983. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). To establish liability on the part of a local governmental entity like St. Tammany Parish, Jones must demonstrate a policy or custom of the Parish which caused the alleged constitutional deprivation. *See Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (municipality cannot be held liable for violation of civil rights solely because an employee is a tortfeasor.) Local governments can never be liable under section 1983 for the acts of those whom the local government has no authority to control. *McMillian v. Johnson,* 88 F.3d 1573, 1577 (11th Cir.1996), *cert. denied,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

 Jones alleges constitutional deprivations related to the management of the jail. Sheriffs in Louisiana are final policy makers with respect to management of the jail. The Sheriff's policy-making authority over management of the jail is not the result of a delegation from the Parish or any other local governmental entity. The Sheriff's authority is derived from the state constitution, not the parish. *See* La. Const. art. 5 § 27.

Under Louisiana law, it is the Sheriff's office that has the obligation to provide medical care for the prisoners. The Sheriff's office also controls the inmates of the jail, the employees of the jail, and the daily operation of the jail. *See* La.Rev.Stat. ann. § 33:1435; 15:704; *O'Quinn v. Manuel,* 773 F.2d 605, 609 (5th Cir.1985) (quoting *Amiss v. Dumas,* 411 So.2d 1137, 1141 (La.App. 1st Cir.), *writ denied,* 415 So.2d 940 (La.1982)). The deputies are employees of the Sheriff. *See Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669, 670 (La.1981); uncontroverted affidavits of Captain Gregory Longino, Major Laron Hunter, and Sherri Mederos (administrator for the St. Tammany Parish Police Jury). The Parish has no authority to manage the Sheriff's employees. The Parish exercises no power or discretion in the functioning of the Sheriff's office or the jail. The Parish's responsibility to the jail is limited to the funding of the jail. *See* La.Rev.Stat. ann. § 15:702; *Amiss,* 411 So.2d at 1141. The Parish's fiscal responsibility for the jail does not constitute authority to control how the Sheriff fulfills his duties. *See Jenkins,* 402 So.2d at 671 (neither the state nor the parish exercises any significant control over Sheriff's deputies). Under this scheme, the Sheriff's policy-making decisions as well as his day-to-day decisions regarding the management of the jail, cannot be imputed to the Parish. Therefore, the Parish is entitled to summary judgment dismissing the claims against it under section 1983.

#### 7. *Official Capacity Liability of Sheriff Strain Warden Hunter, and Captain Longino*

 If a detainee succeeds in showing a violation of his constitutional due process right, in order to hold a governmental entity liable for such a violation, he must show that the violation resulted from the entity's policy or custom adopted or maintained with objective deliberate indifference. *Hare,* 74 F.3d at 649 n. 4 (citing *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Generally, official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citing *Monell*, 436 U.S. at 690 n. 55, 98 S.Ct. 2018). The Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office. *Jenkins*, 402 So.2d at 671; *Burge v. Parish of St. Tammany*, 1997 WL 10243 at * 18 (E.D.La. Jan.8, 1997); *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1301 (W.D.La.1994). As Warden Hunter was not a final policy-maker and is not alleged to be involved in any of the alleged violations, and because Captain Longino was neither a policy-maker nor objectively deliberately indifferent, the court will dismiss the official capacity claims against them.

The only evidence before the court of an unconstitutional policy or practice of the Sheriff is that he maintained only one wheelchair at the jail. Jones testified in deposition that he was told that he could not have a wheelchair because the jail had only one. This is a challenge to a condition of confinement subject to analysis under the *Bell* test. That test provides that a pre-trial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose. *Bell*, 441 U.S. at 539, 99 S.Ct. at 1874; *Hare*, 74 F.3d at 640.

The evidence shows that despite Jones having made the defendants aware of his apparent medical need for a wheelchair, he was not provided one. The defendants' evidence does not address whether there is a finite number of wheelchairs available for prisoners. The defendants' only explanation for why Jones did not receive a wheelchair was that "the medical personnel did not order a wheelchair for Mr. Jones." There is no explanation as to why the medical personnel did not order a wheelchair, and the court cannot assume that it was based on lack of medical need, as opposed to lack of availability.

The court finds that Jones has raised genuine issues of material fact as to whether the Sheriff had a policy or practice of maintaining an inadequate number of wheelchairs, whether any such practice was reasonably related to a legitimate governmental purpose, and if not, whether any such practice was maintained with objective deliberate indifference to Jones' substantial risk of harm. Jones does not have a claim under § 1983 to the extent that a wheelchair was not provided based on a medical decision because Jones has not sued any medical personnel, and they are not agents of the Sheriff.

### B. *Section 1981*

Section 1981 provides liability for acts of racial discrimination in connection with the making and enforcement of contracts. *See* 42 U.S.C. § 1981. The plaintiff has not produced any evidence in support of such discrimination. Accordingly, the defendants' motion for summary judgment dismissing the plaintiffs § 1981 claim will be granted.

### C. *Section 1985(3)*

The plaintiff also alleges a claim pursuant to § 1985(3) which establishes a private right of recovery from persons who conspire to deprive an individual of equal protection of the laws. *See* 42 U.S.C. § 1985(3). Jones has produced no evidence to show a racially motivated conspiracy behind the defendants' conduct. Accordingly, the defendants are entitled to summary judgment on this claim.

### D. *Section 1986*

Section 1986 imposes liability for neglect in preventing § 1985 violations. The law makes it clear that a § 1986 action is premised upon a violation of § 1985. *See Hamilton v. Chaffin*, 506 F.2d 904 (5th Cir.1975). Thus, without a valid § 1985 claim, one cannot maintain a § 1986 claim. As discussed above, the plaintiff has no evidence to support his § 1985 claim. Therefore, the claim fails as matter of law.

### E. *State Negligence Claim*

Jones' remaining claim against the defendants is for negligence under state law. The claim is based on the same grounds as his § 1983 claims. The court finds genuine issues of material fact as to the liability of Sheriff Strain in his official capacity. *See* La. Civ.Code art. 2320; *Hall v. St. Helena*

*Parish Sheriff's Dept.,* 668 F.Supp. 535, 540 (M.D.La.1987), *aff'd,* 862 F.2d 872 (5th Cir. 1988) (a parish sheriff is liable in his official, but not personal capacity for the torts of his deputies committed in the course and scope of employment) (citing La. Civ.Code art. 2320; *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669 (La.1981)).

The negligence claims against Warden Mongovan and Warden Hunter are dismissed for lack of any evidence of personal knowledge, participation, or responsibility for the events in question. The negligence claims against Captain Longino are dismissed for the reasons set forth in Section IV(A)(2)(a) and (b) of this opinion.

For the reasons set forth in Section IV(A)(6), there can be no vicarious liability of the Parish for the acts and omissions of the Sheriff or any of his deputies. *See Griffin v. Foti,* 523 So.2d 935, 938 (La.App. 4th Cir.), *writ denied,* 531 So.2d 272 (La.1988); *Nielson v. Jefferson Parish Sheriff's Office,* 242 So.2d 91, 94 (La.App. 4th Cir.1970).

### V. *Conclusion*

In view of the foregoing rulings, all claims in this suit will be dismissed except the official capacity claim against Sheriff Strain under 42 U.S.C. § 1983 arising out of the denial of a wheelchair and all official capacity claims against Sheriff Strain under Louisiana negligence laws.

Accordingly,

IT IS ORDERED that:

(1) The Parish of Tammany's Motion to Dismiss Complaint Pursuant to Rule 12(b)(1), (4), and (6) and in the Alternative Motion for Summary Judgment is GRANTED, dismissing all claims of plaintiff David Jones against defendant the Parish of St. Tammany.

(2) Defendants', Sheriff Rodney J. Strain, Jr., Warden Laron Hunter, and Captain Gregory Longino, Motion to Dismiss Complaint Pursuant to Rule 12(b)(1), (4), and (6) and in the Alternative Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as follows:

(a) All claims of plaintiff David Jones' against defendants James Doe and ABC Insurance Company are DISMISSED WITHOUT PREJUDICE;

(b) All claims of plaintiff David Jones' against defendant Captain Gregory Longino are DISMISSED;

(c) All claims of plaintiff David Jones' against defendant Sheriff Strain in his individual capacity are DISMISSED;

(d) All claims of plaintiff David Jones' against Warden E.T. Mongovan are DISMISSED;

(e) All claims of plaintiff David Jones' against Warden Laron Hunter are DISMISSED; and

(f) All claims of plaintiff David Jones' against the St. Tammany Parish Jail are DISMISSED.