Abideen A. OLADIPUPO

v.

John AUSTIN, et al.

Steve Arthur, et al.,

v.

Bill Belt, et al.

Nos. Civ.A. 97–0931, Civ.A. 99–0648.

United States District Court,
W.D. Louisiana,
Alexandria Division.

April 24, 2000.

**656**

Abideen A. Oladipupo, Modutox Builders & Suppliers, Shomolu Lagos Nigeria, plaintiff pro se.

Baldwin Neil Foster, DeRidder, LA, consolidated plaintiff pro se.

Balram Ramsukh, Miami, FL, consolidated plaintiff pro se.

Steve Arthur, DeRidder, LA, consolidated plaintiff pro se.

Juan Carlos Brinis Fernandez, Bastrop, TX, consolidated plaintiff pro se.

Henry Kobnar Davies, Pine Prairie, LA, consolidated plaintiff pro se.

Tara B. Cochran, Office of Rodney M Rabalais, Marksville, LA, for John Austin, Bill Belt, AJ Thibodeaux, Kelly Ray Jones, Jimmy Dauzat, Eric Jacobs, Joseph Meche, Sgt. Blackman, Kerry Sayer, defendants.

Thomas B. Thompson, U.S. Atty's Office, Lafayette, LA, for John Caplinger, Lynne Underdown, defendants.

Katherine W. Vincent, U.S. Atty's Office, Lafayette, LA, for Janet Reno, Board of Directors, Dist. Director of INS, defendants.

### RULING

LITTLE, Chief Judge.

Before the court is the report and recommendation of the magistrate recommending that we deny the motion for summary judgment filed by defendants Bill Belt ("Belt"), Sheriff of Avoyelles Parish; A.J. Thibodeaux ("Thibodeaux"), Warden of Avoyelles Parish Jail ("APJ"); and Kelly Jones ("Jones"), Jimmy Dauzat ("Dauzat"), and Eric Jacobs ("Jacobs"), all officers at APJ. In their motion, defendants ask this court to dismiss plaintiff Steve Arthur's ("Arthur") complaint against them as there are no genuine issues of material fact for trial and defendants are entitled to judgment as a matter of law. For the reasons stated below, we decline to adopt the magistrate's recommendation and GRANT in part, and DENY in part, defendants' motion for summary judgment.

### I. Factual Background

Arthur, an INS detainee, brings this claim for monetary relief pursuant to 42 U.S.C. § 1983 based on certain incidents that occurred while he was confined at APJ.[1] Arthur filed his original complaint against defendants on 11 March 1999 alleging that on or about 24 November 1998 defendants removed the mattresses from the cell he shared with other INS detainees after the detainees attempted to block the ventilation system in order to shield themselves from the cold, forcing Arthur to sleep on the bare floor, in cold, wet conditions. Arthur's complaint also seems to challenge the general conditions of confinement at APJ, alleging that his cell at APJ was unsanitary, cold, unventilated, and flooded. Arthur later amended his complaint on 16 August 1999, asserting that "Deputy Wright," "Supervisor Rainwater" and "Warden Bruce Young" had violated his constitutional rights by not allowing him to wear his Rastafarian headgear to sick call and denying him medical care for a rash. Plaintiff did not, however, amend his complaint to name these individuals as defendants nor allege that the named defendants were in any way involved in the incidents described in his amended complaint.

### II. Standard for Summary Judgment

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the

---

1. Since filing this suit, Arthur has been transferred to another facility.

non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *See id.* at 255, 106 S.Ct. at 2513. If the movant produces evidence tending to show that there is no genuine issue of material fact, the non-movant must come forward, after adequate time for discovery, with "specific facts" sufficient to establish the existence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A plaintiff may not withstand summary judgment by relying solely on unsupported, conclusory allegations, however. *See, e.g., Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993) (summary judgment is appropriate if "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

Although we must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts, a pro se litigant does not escape the essential burden of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment. *See Brown v. Crawford,* 906 F.2d 667, 670 (11th Cir.1990). In order to survive summary judgment, Arthur's submissions must show that there is a genuine issue of material fact. In this case, Arthur does not support his opposition to the motion to dismiss with affidavits or other traditional summary judgment evidence. His com-

plaint is, however, sworn under oath. A verified complaint can have the same effect as an affidavit. *See Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir.1993). Although Arthur did not respond to defendants' original motion for summary judgment, he did respond to the defendants' arguments in his objections to the magistrate's report and recommendation. We therefore accept the plaintiff's complaint and his response to the defendants' opposition to the magistrate's report and recommendation as appropriate summary judgment evidence.

The magistrate concluded that genuine issues of fact remain as to Arthur's claims based on inadequate ventilation and heating, denial of mattresses, and the leaky condition of the cells and recommended that we deny summary judgment to all defendants on all claims. In their objections to the magistrate's report and recommendation, the defendants contend that the incidents alleged in Arthur's complaint, even if true, do not rise to the level of constitutional deprivations. For the reasons discussed below, we conclude that defendants are entitled to only partial summary judgment and therefore decline to adopt the magistrate's report and recommendation.

**A. Section 1983 Standard**

█ Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). To make out any claim under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law and, (2) that this conduct deprived the plaintiff of rights secured by the Constitution or federal statutes. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Evans v. City of Marlin, Tex-*

*as*, 986 F.2d 104, 107 (5th Cir.1993). Pretrial detainees possess a clearly established constitutional right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534–37, 99 S.Ct. 1861, 1871–73, 60 L.Ed.2d 447 (1979). The Supreme Court has held that a pretrial detainee's claims of unconstitutional conditions of confinement[2] are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to sentenced inmates. *See id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16; *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996).

■ In the context of section 1983 claims by pretrial detainees,[3] the Fifth Circuit has distinguished between cases challenging specific acts and omissions and those alleging constitutional deprivations by virtue of the general conditions of confinement. *See Hare*, 74 F.3d at 644. A conditions of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *See id.* In condition cases, the harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997). The Fifth Circuit has concluded that where a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if the court finds that the conditions of confinement are not reasonably related

to a legitimate, non-punitive governmental objective. *See Hare*, 74 F.3d at 640 (citing *Bell*, 441 U.S. at 538–39, 99 S.Ct. at 1873–74); *see also Scott*, 114 F.3d at 53 (citing *Hare* ).

■ In contrast to a conditions of confinement case, where a plaintiff's allegations are based on a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *Hare*, 74 F.3d at 645. Where the plaintiff is suing an individual defendant, as opposed to a municipality, for a specific act or omission the plaintiff " 'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [her] constitutional rights.' " *Olabisiomotosho*, 185 F.3d at 526 (citing *Flores v. County of Hardeman*, 124 F.3d 736, 738–39 (5th Cir.1997)). An official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650.[4] Although the Fifth Circuit has carefully distinguished the conditions of confinement cases from those cases arising from a specific act or omission, it has also noted that "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases." *Scott*, 114 F.3d at 54 (citing *Hare*, 74 F.3d at 643). Here, Arthur complains of the general conditions of his cell and the deprivation of the mattress that resulted

---

2. "A 'condition of confinement' case is a '[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement.' " *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996)).

3. When addressing the rights of INS detainees, the Fifth Circuit instructs that the court should look to jurisprudence establishing the constitutional rights of pretrial detainees. *See Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986).

4. *See also Sibley v. Lemaire*, 184 F.3d 481, 489 (5th Cir.1999) ("In *Hare* ... we adopted the same deliberate indifference standard for pretrial detainees as the one articulated by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), for convicted prisoners. 'It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.' ").

from those conditions. Accordingly, this case should be treated as a conditions of confinement case.

## B. Qualified Immunity and Clearly Established Rights

 All defendants contend that they are protected from liability on the basis of qualified immunity. Qualified immunity protects officials in the course of performance of their discretionary duties unless their conduct violates a "clearly established [federal] statutory or constitutional right[ ] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Evans v. Ball*, 168 F.3d 856 (5th Cir.1999); *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir.1998). To assess whether defendants are entitled to immunity, we must first determine whether a plaintiff has alleged the violation of a clearly established constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991). If we find a right to be clearly established, we must then examine the objective legal reasonableness of the official's conduct under the circumstances, "in light of clearly established law and the information the [ ] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).[5]

### 1. General Conditions of Confinement

It is well established that detainees have the right to be free of punishment. Punishment is shown, for instance, where a detainee is deprived of heating, or sanitary conditions. *See, e.g., Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir.1999) (explaining that prisoners have a right to be free from exposure to raw sewage and extreme cold); *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir.1983) (finding that allegations of a cold, rainy, roach invested jail cell, with inoperative toilet facilities, stated a cause of action under the Eighth Amendment). Arthur has alleged in his verified complaint that his cell at APJ was cold, unsanitary, improperly ventilated, and flooded. The defendants, contend that there was minimal flooding and that INS detainees are provided with sufficient bedding to keep warm.[6] The factual discrepancies regarding the conditions of Arthur's cell presented by the defendants' motion for summary judgment and the plaintiff's verified complaint show that there is a genuine issue of material fact as to whether the conditions in the detainment unit violated Arthur's clearly established right to be free from punishment.

### 2. 24 November 1998 Incident

 Arthur alleges that on 24 November 1998, Officer Jacobs took away his mattress and forced Arthur and his cellmates to tear down the makeshift barrier they had fashioned to protect themselves from the cold and water, thereby forcing Arthur to sleep on a cold, wet floor for seven hours. "[T]he State owes the same duty under the Due Process Clause and

---

5. The qualified immunity defense involves a shifting burden of proof. The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *See Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir.1982). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See id.; Whatley v. Philo, 817 F.2d 19, 20* (5th Cir.1987); *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1310 (5th Cir.1987). The Fifth Circuit does not require that an official demonstrate that he

did not violate clearly established federal rights; that burden is placed on the plaintiff. *See Salas v. Carpenter*, 980 F.2d 299, 306 (1992).

6. The defendants further contend that none of Arthur's complaints invoke the constitution. Arthur is a pro se plaintiff. Although he does not specifically raise the precise constitutional provisions that offer him protection, we will read the complaint liberally to state a possible claim under the due process clause of the Fourteenth Amendment.

the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare* 74 F.3d at 650. A mattress is a basic human need, which must be provided to a detainee.

Several federal courts have found that forcing a pretrial detainee to sleep without a mattress, or on the floor on a mattress, for even a short period of time, constitutes a violation of the Fourteenth Amendment. *See, e.g., Thompson v. City of Los Angeles,* 885 F.2d 1439, 1449 (9th Cir.1989) (valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process); *Anela v. Wildwood,* 790 F.2d 1063, 1067 (3d Cir.1986) (allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim); *Lareau v. Manson,* 651 F.2d 96, 105 (2d Cir.1981) (prison's use of floor mattresses for pretrial detainees unconstitutional "without regard to the number of days for which a prisoner is so confined"); *Martino v. Carey,* 563 F.Supp. 984, 1002 (D.Or.1983) (fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights); *Vazquez v. Gray,* 523 F.Supp. 1359, 1365 (S.D.N.Y.1981) (use of floor mattresses for pretrial detainees unconstitutional).

■■■ These cases are instructive. Arthur is not a convicted inmate. Rather, he is a detainee, awaiting removal from the United States. He is thus entitled to be free from punishment under the due process clause. Arthur's allegation that he was provided with neither a bed nor even a mattress constitutes a cognizable Fourteenth Amendment claim. The defendants may escape liability, under the doctrine of qualified immunity, however, if their ac-

tions are considered reasonable. Defendants contend that even if Arthur was forced to sleep on the floor for seven hours, their actions were reasonable because the mattress was removed from his cell only after he and his cellmates placed barriers in front of the ventilation system in violation of prison policy. We are not convinced that this justification warranted removal of Arthur's mattress. Rather, we find that there is a genuine issue of material fact remaining as to whether defendants' actions were reasonable. As such, the defendants are not entitled to summary judgment as to Arthur's claim for deprivation of a mattress.

## C. Liability of Each Defendant

■■■ In a section 1983 action, a supervisor cannot be held liable under the doctrine of respondeat superior. *See Monell,* 436 U.S. at 694 n. 58, 98 S.Ct. at 2035 n. 58; *Alton v. Texas A & M University,* 168 F.3d 196, 200 (5th Cir.1999); *Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979). A supervisor may only be held liable if the plaintiff proves either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987).

### 1. *Individual Capacity Suit Against Sheriff Belt*

■■■ In their motion for summary judgment defendants claim that Belt is entitled to be dismissed from this lawsuit because he was not personally involved in any of the actions giving rise to this lawsuit. In order to be held liable under section 1983, an individual defendant must have personally participated in the alleged constitutional deprivation. *See Murphy v. Kellar,* 950 F.2d 290, 292 & n. 7; *Thompson v. Steele,* 709 F.2d 381, 382–83 (5th Cir.1983). Here, Arthur does not state facts or submit any summary judgment evidence whatsoever tending to show that Belt was

even aware of the alleged constitutional deprivations at APJ. Arthur has failed to meet his burden under *Celotex*. Accordingly, Belt is entitled to be dismissed from this suit in his individual capacity.

### 2. *Official Capacity Suit Against Sheriff Belt*

 Although Arthur does not specify whether he is suing the defendants in their individual or official capacities, we interpret his complaint to incorporate a cause of action for both. Sheriff Belt may be sued in his official capacity because under Louisiana law, administration of a parish jail, including the obligations to provide medical care for, feed and clothe the prisoners, is the province of the Sheriff of the parish. *See* La.Rev.Stat.Ann. § 15:704 (providing that Sheriff is the "keeper" of the parish jail). Sheriffs in Louisiana are considered final policy makers with respect to management of the jail. *See* La.Rev. Stat.Ann. § 15:704 ("Each sheriff shall be the keeper of the public jail of his parish...."); *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 613 (E.D.La.1998); *see also Langley v. City of Monroe*, 582 So.2d 367, 368 (La.App.2d Cir.1991) (explaining that Sheriff is the proper defendant in an official capacity suit challenging conditions at parish prison).

While jail officials in their individual capacities may be held liable for acts or omissions causing constitutional deprivations if they acted with subjective deliberate indifference, more is required to establish liability on the part of the governmental entity that employs these officials. *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir.1995) Under section 1983, where a plaintiff challenges the general conditions of confinement, we assume, by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation. *See Scott*, 114 F.3d at 53. The inquiry becomes whether the conditions are reasonably related to a legiti-

mate government purpose. *See Bell*, 441 U.S. at 539, 99 S.Ct. at 1874,

 Since we are to assume that the Sheriff intended the conditions at APJ, our sole inquiry is whether the conditions are reasonably related to a legitimate government objective. The defendants have not proffered any legitimate government objective that justifies the general conditions of which Arthur complains. Rather, they focus their arguments on disputing that any constitutional violation ever occurred. As such, the court finds that Arthur has raised genuine issues of material fact as to whether the conditions in the INS detainment unit are reasonably related to a legitimate governmental objective. Belt is therefore not entitled to summary judgment on Arthur's claims against him in his official capacity.

As stated above, the Sheriff alone has the responsibility to maintain his parish jail. Neither the Warden nor any of the other defendants are under any such a duty. Arthur's suit against the remaining individual defendants in their official capacity are therefore DISMISSED.

### 3. *Warden Thibodeaux, Eric Jacobs and Kelly Jones*

 In his complaint, Arthur contends that he complained of the conditions at APJ to Warden Thibodeaux but received no response. As such, Thibodeaux was on notice of the conditions at APJ of which Arthur complains and had the opportunity to remedy the alleged unconstitutional general conditions of confinement. We therefore disagree with the defendants' argument that Arthur's claim against the Warden must fail because it is based on respondeat superior. Rather, Arthur's claim is predicated on Thibodeaux's direct role in allowing the alleged constitutional deprivations to occur and continue.

Arthur also names Jones and Jacobs as defendants, claiming that he informed Jones in writing of the alleged deprivations, and talked to Jacobs in person com-

plaining of the condition of his cell. Jones and Jacobs were thus on notice of the flooded, freezing condition of Arthur's cell. This allegation that Thibodeaux, Jones, and Jacobs all had knowledge of the conditions of Arthur's cell is sufficient to create a genuine issue of material fact as to whether defendants were personally involved in creating and perpetuating the unconstitutional conditions Arthur claims to have endured at APJ.

In their motion for summary judgment, defendants claim that they are entitled to qualified immunity. To assess whether defendants are entitled to immunity, we must first determine whether a plaintiff has alleged the violation of a clearly established constitutional right. *See Siegert*, 500 U.S. at 231, 111 S.Ct. at 1792–93. If we find a right to be clearly established, we must then examine the objective legal reasonableness of the official's conduct under the circumstances, "in light of clearly established law and the information the [ ] officers possessed." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

Here, we have already determined that Arthur has stated a cognizable claim for violation of his clearly established rights based on the cold, unsanitary, flooded condition of his cell. *See* discussion *supra.* The next inquiry is whether defendants' actions were reasonable in light of clearly established law. The defendants have not presented any evidence that establishes that there is no genuine issue of material fact remaining as to whether they acted reasonably in allowing the INS detainees to sleep in cold, unsanitary, wet conditions. Accordingly, we conclude that defendants are not entitled to summary judgment on the basis of qualified immunity as to plaintiff's claims arising from the general conditions of confinement at APJ.

### 4. *Claims against Jimmy Dauzat, Lieutenant Blackman, and Unnamed Members of the APJ Staff*

In his complaint, Arthur names Jimmy Dauzat, Lieutenant Blackman, and "all the staff" at APJ as defendants. His pleadings contain no factual allegations against these parties. Accordingly, Dauzat, Blackman, and the other unnamed members of the APJ staff are dismissed as defendants. *See generally Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir.1992) (requiring that a section 1983 plaintiff state facts showing the defendant's personal involvement in the alleged wrong).

### III. Conclusion

Arthur has shown that genuine issues of material fact remain regarding his claims against Thibodeaux, Jones, and Jacobs for the general conditions of confinement at APJ, we therefore DENY these defendants' motion for summary judgment. We GRANT the motion for summary judgment, however, as to Dauzat and Belt, after finding that Arthur's complaint fails to allege sufficient personal involvement by these defendants. Accordingly, Arthur's claims against Blackmon, Dauzat and Belt are DISMISSED WITHOUT PREJUDICE. Moreover, Arthur has not developed his claim against Blackmon and the rest of the APJ staff and these defendants are also DISMISSED.

We also note that Arthur has asserted claims against unnamed defendants. If Arthur wishes to pursue these claims he should institute a new lawsuit. Arthur's claims based an unnamed defendants' denial of medical care and his alleged right to wear religious headgear are DISMISSED WITHOUT PREJUDICE.