Abideen A. OLADIPUPO

v.

John AUSTIN, et al.

Balram Ramsukh

v.

Bill Belt, et al.

Nos. Civ.A. 97–0931, Civ.A. 99–1896.

United States District Court,
W.D. Louisiana.

April 24, 2000.

---

Abideen A. Oladipupo, Modutox Builders & Suppliers, Shomolu Lagos Nigeria, plaintiff pro se.

Baldwin Neil Foster, DeRidder, LA, consolidated plaintiff pro se.

Balram Ramsukh, Miami, FL, consolidated plaintiff pro se.

Steve Arthur, DeRidder, LA, consolidated plaintiff pro se.

Juan Carlos Brinis Fernandez, Bastrop, TX, consolidated plaintiff pro se.

Henry Kobnar Davies, Pine Prairie, LA, consolidated plaintiff pro se.

Tara B. Cochran, Office of Rodney M Rabalais, Marksville, LA, for John Austin, Bill Belt, A.J. Thibodeaux, Kelly Ray Jones, Jimmy Dauzat, Eric Jacobs, Joseph Meche, Sgt. Blackman, Kerry Sayer, defendants.

Thomas B. Thompson, U.S. Atty's Office, Lafayette, LA, for John Caplinger, defendant.

Thomas B. Thompson, Katherine W Vincent, U.S. Atty's Office, Lafayette, LA, for Lynne Underdown, defendant.

Katherine W. Vincent, U.S. Atty's Office, Lafayette, LA, for Janet Reno, Board of Directors, Dist Director of INS, consolidated defendants.

## RULING

LITTLE, Chief Judge.

Before the court is the report and recommendation of the magistrate (Doc. 226), suggesting that we deny the motion for summary judgment filed by defendants, Sheriff Bill Belt ("Belt"), Warden A.J. Thibodeaux ("Thibodeaux"), Officer Kelly Jones ("Jones"), Officer John Austin ("Austin"),[1] and the Medical Department at Avoyelles Parish Jail ("APJ"). In their motion, defendants ask this court to dismiss plaintiff Balram Ramsukh's ("Ramsukh") complaint against them as there are

---

1. Contrary to the false assertion of defendants in their motion for summary judgment, John Austin was properly served in this case.

no genuine issues of material fact for trial and defendants are entitled to judgment as a matter of law. For the reasons stated below, we adopt the magistrate's recommendation in part, and GRANT in part, and DENY in part, defendants' motion for summary judgment.

## I. Factual Background

Ramsukh brings this claim against defendants pursuant to 42 U.S.C. § 1983. Ramsukh, an INS detainee awaiting removal from the United States, filed his original complaint against defendants on 5 October 1998 alleging that while detained at APJ from 22 June 1998 to 8 January 1999,[2] he had to sleep without a mattress for his first thirty-six hours of detainment, endured inadequate recreation, denial of religious, political, and sexual publications, denial of towels and underwear, confiscation of vitamins, overcrowding and frequent flooding of the segregation unit, verbal threats and abuse, unsanitary conditions, denial of medical and dental care, housing with HIV-infected detainees, and exposure to second hand smoke. Ramsukh also contends that there was no grievance system in place for INS detainees and that the nurses and corrections officers' refusal to wear name tags. Ramsukh also brings a claim based on the 31 July 1998 incident wherein he was denied a meal and allegedly "physically mishandled" by Austin because he was not wearing shoes and socks.

The defendants filed a joint motion for summary judgment on 23 July 1999, arguing that Ramsukh failed to state a claim for any constitutional violation and asserting the defense of qualified immunity. After the magistrate issued a report and recommendation suggesting that this court deny their motion for summary judgment, defendants filed an opposition to the magistrate's recommendation, contending that the incidents alleged in Ramsukh's complaint, even if true, do not rise to the level of constitutional deprivations.

## II. Standard for Summary Judgment

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *See id.* at 255, 106 S.Ct. at 2513. If the movant produces evidence tending to show that there is no genuine issue of material fact, the non-movant must come forward, after adequate time for discovery, with "specific facts" sufficient to establish the existence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Unsupported, conclusory allegations are not sufficient to withstand summary judgment, however. *See, e.g., Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir. 1993) (summary judgment is appropriate if "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

Although we must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts, a pro se litigant does not escape the essential burden of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment. *See Brown v. Crawford,* 906 F.2d 667, 670

---

**2.** Ramsukh has since been transferred from APJ to another facility.

(11th Cir.1990). A verified complaint can have the same effect as an affidavit. *See Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir.1993). In this case, Ramsukh does not support his opposition to the motion to dismiss with affidavits or other traditional summary judgment evidence. His complaint is, however, sworn under oath. We therefore accept the plaintiff's complaint and amended complaint as appropriate summary judgment evidence.

**A. Section 1983 Standard**

■ Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). To make out any claim under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law and, (2) that this conduct deprived the plaintiff of rights secured by the Constitution or federal statutes. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Evans v. City of Marlin, Texas,* 986 F.2d 104, 107 (5th Cir.1993). Neither party disputes that defendants were acting under state law. Rather, the parties disagree as to whether Ramsukh has stated a violation of his constitutional rights.

■ Pre-trial detainees possess a clearly established constitutional right to be free from punishment. *See Bell v. Wolfish,* 441 U.S. 520, 534–37, 99 S.Ct. 1861, 1871–73, 60 L.Ed.2d 447 (1979). The Supreme Court has held that a pretrial detainee's claims of unconstitutional conditions of confinement[3] are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to sentenced inmates. *See id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16; *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir.1996).

■ In the context of section 1983 claims by pretrial detainees,[4] the Fifth Circuit has distinguished between cases challenging specific acts and omissions and those alleging constitutional deprivations by virtue of the general conditions of confinement. *See Hare,* 74 F.3d at 644. A conditions of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *See id.* In condition cases, the harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997). The Fifth Circuit has concluded that where a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if the court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *See Hare,* 74 F.3d at 640 (citing *Bell,* 441 U.S. at 538–39, 99 S.Ct. at 1873–74); *see also Scott,* 114 F.3d at 53 (citing *Hare*).

■ In contrast to a conditions of confinement case, where a plaintiff's allegations are based on a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir.1999); *Hare,* 74 F.3d at 645. Where the plaintiff is suing an individual defendant, as opposed to a municipality, for a

---

**3.** "A 'condition of confinement' case is a '[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement.'" *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (citing *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996)).

**4.** When addressing the rights of INS detainees, the Fifth Circuit instructs that the court should look to jurisprudence establishing the constitutional rights of pretrial detainees. *See Ortega v. Rowe,* 796 F.2d 765, 767 (5th Cir. 1986).

specific act or omission the plaintiff " 'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [her] constitutional rights.' " *Olabisiomotosho*, 185 F.3d at 526 (citing *Flores v. County of Hardeman*, 124 F.3d 736, 738–39 (5th Cir.1997)). An official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650.[5] Although the Fifth Circuit has carefully distinguished the conditions of confinement cases from those cases arising from a specific act or omission, it has also noted that "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases." *Scott*, 114 F.3d at 54 (citing *Hare*, 74 F.3d at 643).

Here, Ramsukh's complaint alleges facts challenging both episodic acts of individuals as well as conditions of confinement. He challenges the constitutionality of both the general conditions of confinement and the specific incident where he was deprived of a meal and allegedly physically mishandled when he would not wear shoes and socks to the dining hall.

## B. Qualified Immunity

 All defendants contend that they are protected from liability on the basis of qualified immunity. Qualified immunity protects officials in the course of

performance of their discretionary duties unless their conduct violates a "clearly established [federal] statutory or constitutional right[ ] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Evans v. Ball*, 168 F.3d 856 (5th Cir.1999); *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir.1998). To assess whether defendants are entitled to immunity, we must first determine whether a plaintiff has alleged the violation of a clearly established constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991). If we find a right to be clearly established, we then must examine the objective legal reasonableness of the official's conduct under the circumstances, "in light of clearly established law and the information the [ ] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity therefore protects an official whose conduct was objectively reasonable, even if the conduct infringed upon the plaintiff's constitutional rights. *See id.* at 641, 107 S.Ct. at 3040.[6]

### *General Conditions of Confinement*

Ramsukh alleges that, while at APJ, he was deprived of adequate recreation, had no access to medical and dental care, was denied religious, political, and sexual publications, and had no towels or underwear. He also complains that the conditions of the unit at APJ deprived him of his consti-

---

5. *See also Sibley v. Lemaire*, 184 F.3d 481, 489 (5th Cir.1999) ("In *Hare* ... we adopted the same deliberate indifference standard for pretrial detainees as the one articulated by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), for convicted prisoners. 'It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.' ").

6. The qualified immunity defense involves a shifting burden of proof. The defendant official must initially plead his good faith and establish that he was acting within the scope

of his discretionary authority. *See Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir.1982). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See id.; Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir.1987); *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1310 (5th Cir.1987). The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; that burden is placed on the plaintiff. *See Salas v. Carpenter*, 980 F.2d 299, 306 (1992).

tutional rights in that the unit was overcrowded and unsanitary, often flooded, and he was housed with HIV-infected detainees, and exposed to second hand smoke. He also challenges the fact that there is no grievance system at APJ and that nurses and corrections officers' refuse to wear name tags, and verbally abused him. The defendants assert that even if Ramsukh's allegations are true, the resulting conditions are not sufficiently serious to implicate the plaintiff's constitutional rights.

 The magistrate analyzed Ramsukh's claims under the Eighth Amendment. Clearly if a situation arguably violates the Eighth Amendment, it would constitute punishment in violation of Ramsukh's due process rights. We thus adopt the magistrate's conclusion that Ramsukh can withstand summary judgment on the issues of inadequate recreation, overcrowding, lack of adequate heating and ventilation, denial of towels and underclothing, exposure to second hand smoke,[7] and his first amendment claim for denial of reading material.[8] We disagree with the magistrate, however, on the issue of segregation of detainees infected with HIV, and therefore add our own analysis. We also add our own discussion of issues presented in Ramsukh's complaint but omitted from the magistrate's discussion.

### 1. *Housing with HIV-positive Detainees*

 In his original complaint, and again in his amended complaint, Ramsukh states that, while at APJ, he was housed with inmates who are HIV positive. He does not elaborate on this claim. Although courts have held that a prison may segregate inmates with HIV without violating the constitution, no court has imposed a duty on prisons to segregate such prisoners. *Contrast Muhammad v. Carlson,* 845 F.2d 175 (8th Cir.1988) (upholding prison's segregation of HIV-infected inmates); *and Cordero v. Coughlin,* 607 F.Supp. 9 (S.D.N.Y.1984) (holding that segregation of inmates with AIDS did not amount to cruel and unusual punishment or violate inmates' equal protection or free association rights), *with Robbins v. Clarke,* 946 F.2d 1331 (8th Cir.1991) (failure to segregate HIV-positive prisoners from the general population held not to constitute cruel and unusual punishment); *Glick v. Henderson,* 855 F.2d 536 (8th Cir.1988) (finding prison official's decision not to institute AIDS testing and segregation program was not unreasonable); *see also Feigley v. Fulcomer,* 720 F.Supp. 475 (M.D.Pa.1989) (rejecting claim that failure to require segregation constituted cruel and unusual punishment); *Woods v. White,* 689 F.Supp. 874 (W.D.Wis.1988) (holding that prisoner had a right to privacy which was violated by disclosure of his HIV-positive status to non-medical prison personnel and other inmates), *aff'd,* 899 F.2d 17 (7th Cir.1990).

We find these cases to be persuasive. The defendants were under no affirmative duty under the constitution to segregate those detainees with HIV from the non-infected detainees. Accordingly, we grant summary judgment in favor of the defendants on Ramsukh's claim for monetary damages on this issue.

### 2. *Denial of Medical Care*

 Ramsukh argues that he has not been given adequate medical and den-

---

7. The magistrate finds that case law precedent supports an inmate's right to be free from exposure to second hand smoke. He then concludes that the defendants are not entitled to summary judgment because they "have not addressed this issue in their motion for summary judgment." In reality, the defendants do discuss plaintiff's claim for exposure to second hand smoke, but argue that Ramsukh has not asserted any damages as a result of the second hand smoke. We dis-

agree with the defendants, and adopt the magistrates's substantive analysis. An inmate does have a right to be free from high levels of environmental tobacco smoke where he proves that prison smoking policies amounted to unreasonable risk and deliberate indifference to his health. *See, e.g., Rochon v. City of Angola,* 122 F.3d 319, 320 (5th Cir.1997).

8. *But see* discussion *infra.*

tal care. According to Ramsukh he asked APJ medical officials for medication that would help his rash, but was refused care. Pretrial detainees have a due process right to reasonable medical care. *See Sibley v. Lemaire,* 184 F.3d 481, 489 (5th Cir.1999) (discussing the rights of a pretrial detainee and concluding that the prison had the duty to provide reasonable medical care); *Jones v. St. Tammany Parish Jail,* 4 F.Supp.2d 606, 610 (E.D.La.1998) ("Violation of an inmate's liberty interest in bodily integrity by denying him basic human needs such as reasonable medical care, personal safety, and sanitation can amount to punishment."). The defendants argue that Ramsukh was given treatment for his rash. The parties' conflicting accounts of the care received by Ramsukh shows that a genuine issue of material fact remains.

▋ Ramsukh also contends that defendants denied him his vitamins.[9] This claim amounts to a denial of medical care. Pretrial detainees are entitled to reasonable medical care. *See Sibley,* 184 F.3d at 489. If indeed Ramsukh was denied his medically prescribed vitamins, he could show a deprivation of his due process right not to be punished. In their motion for summary judgment, defendants contend that Ramsukh repeatedly refused his vitamins during pill-call and submit medical charts to support their argument. In opposing the defendants' motion for summary judgment, plaintiff refutes the information contained in the chart and denies that he ever refused an offer to take his vitamins. This factual discrepancy is sufficient to defeat the motion for summary judgment by creating a genuine issue of material fact.

### 3. *Denial of Dental Care*

▋ Ramsukh alleges that he was denied dental care. Even a convicted in-

mate has a right of ready access to dental care. *See Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir.1989). In his amended complaint, Ramsukh asserts that he was badly in need of dental care and he repeatedly wrote a request to see a dentist, which was ignored. According to defendants, Ramsukh was not denied medical care but instead was transferred before his request to see a dentist could be processed. Defendants state that plaintiff first made a written request to see a dentist on 16 December 1998 but was transferred from APJ on 8 January 1999. The defendants did not, however, provide documentation to support this contention. Both Ramsukh's original complaint filed on 5 October 1998 and his amended complaint filed on 10 November 1998 state that he was denied dental care. Apparently, he attempted to obtain access to a dentist prior to 16 December 1998. There is no evidence that the denial of access to a dentist was related to a legitimate governmental objectives. *See Hare,* 74 F.3d at 640. This factual dispute precludes summary judgment on the issue of denial of dental care.

### 4. *Verbal Threats/Abuse*

▋ Ramsukh claims that he was verbally threatened and abused while at APJ. Mere allegations of verbal abuse do not present actionable claims under section 1983. *See Bender v. Brumley,* 1 F.3d 271, 274 n. 4 (5th Cir.1993). "[A]s a rule, 'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'" *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.1983) (quoting *Coyle v. Hughs,* 436 F.Supp. 591, 593 (W.D.Okla.1977)). Defendants are therefore entitled to sum-

---

9. Plaintiff alleges that defendants took his vitamins from his cell. In their motion for summary judgment, defendants assert that detainees are not allowed to have bottles of drugs in their cells. Even if plaintiff's allegation is true, APJ's policy of not allowing detainees to hold drugs in their possession is reasonably related to a legitimate government interest. It is indeed reasonable for APJ to have such a policy in order to prevent the proliferation of illicit drugs in the prison. Accordingly, we conclude that plaintiff may not bring a claim based on confiscation of his vitamins.

mary judgment as to Ramsukh's claims for verbal abuse and threats.

### 5. *Lack of Name Tags*

 According to Ramsukh, neither the corrections officers nor the nurses wear name tags. The essence of Ramsukh's claim is that the lack of name tags curbs his ability to write grievances regarding the behavior of certain nurses and officers. Without more factual information, the court can find no reason why the lack of name tags violates Ramsukh's due process rights. The defendants are therefore entitled to summary judgment on Ramsukh's allegations concerning the absence of name tags.

### 6. *Overcrowding and Inadequate Bathroom Facilities*

 According to Ramsukh, the dorm always has an unpleasant smell and there are only eight sinks and eight commodes eight showers for the entire unit, which houses seventy-two INS detainees. The magistrate concluded that the defendants are not entitled to summary judgment on this issue because they did not address the issue "except to rely on the abrogated stipulation and consent decree." We believe that Ramsukh's claim for overcrowding requires further discussion.

The defendants contend that the bathroom facilities comply with state fire and sanitation codes and pass regular inspections by the Department of Corrections and the INS. They also assert that the INS detainment unit complies with the Consent Decree executed in 1997. Ramsukh's allegations indicate that APJ may have in fact failed to comply with state codes during his stay at APJ. Moreover, defendants have not submitted summary judgment evidence to support their claim that no overcrowding occurs in the INS detainment unit. The fact that APJ is required to meet certain criteria set out in the Consent Decree, does not mean that they are necessarily complying with those orders.

 In *Bell*, 441 U.S. at 542, 99 S.Ct. at 1875, the Supreme Court recognized that subjecting a pretrial detainee to overcrowded conditions can, in some circumstances, violate the constitution. Factors the Supreme Court considered in assessing whether "overcrowding" amounts to a constitutional violation are the length of time an individual detainee must spend in a confined area both ultimately and on a daily basis, and the adequacy of the given sleeping space. *See id.* at 543, 99 S.Ct. at 1876. The constitutional right of detainees to be free from overcrowding is firmly established. Defendants have not presented evidence establishing that the INS detainment unit is not overcrowded and therefore have failed to show that no issue of material fact remains on this issue. Accordingly, we deny summary judgment as to plaintiff's claim of overcrowding.

### 7. *Inadequate Training*

 Ramsukh asserts that the officers at APJ lack adequate training. Ramsukh does not elaborate on this claim or show how any of the defendants are responsible for the alleged inadequate training. Ramsukh's only allegation on this issue is that the lack of training of APJ officers is evidenced by the officers' vocabulary, abusive language, and constant threats towards plaintiff. *See* Pl.'s Response to Defs.' Answer at 4. Conclusory statements alone are not sufficient to withstand a motion for summary judgment. *See Krim*, 989 F.2d at 1449; *see also Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir.1996) (finding unsupported allegations to be insufficient to withstand summary judgment on failure to train allegation); *Rhyne v. Henderson County*, 973 F.2d 386, 393 (5th Cir.1992) (concluding that plaintiff could not prevail on cause of action arose for inadequate training where plaintiff failed to produce any evidence on that claim). Based on the lack of factual support for Ramsukh's claim based on lack of adequate training, we find that defendants are

entitled to summary judgment on this issue.

### 8. *Lack of Grievance Procedure*

In his complaint, Ramsukh alleges that there is no grievance procedure at APJ for INS detainees. He further contends that "if you are bold enough to complain about anything, you are placed in a holding cell for hours." The defendants respond that there is a grievance procedure in effect at APJ and attached a copy of the written procedure to their motion for summary judgment. *See* Defs.' Mot. for Summ.J., Ex. A. Ramsukh did not respond to the motion for summary judgment with any evidence that supports his claim that no grievance procedure is in effect.

Inmates "do not have a constitutionally protected right to a grievance procedure." *Brown v. Dodson,* 863 F.Supp. 284, 285 (W.D.Va.1994) (citing *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991)); *Spencer v. Moore,* 638 F.Supp. 315, 316 (E.D.Mo.1986) (holding that "an inmate grievance procedure is not constitutionally required"). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *See Flick,* 932 F.2d at 729. Indeed, Ramsukh has taken advantage of his right to petition this court for redress of his grievances. Even if we were to believe Ramsukh's assertion that APJ lacks a grievance procedure, as a matter of law, Ramsukh does not have a valid claim for violation of his constitutional rights based on his allegation that no grievance procedure exists for the detainees.

### 9. *Shoes and Socks Regulations*

In his complaint and again in his opposition to defendants' motion for summary judgment, Ramsukh challenges APJ's policy requiring inmates to wear socks and shoes in the dining hall. The defendants have advanced a legitimate reason for the policy: "The policy is to prevent slips, foot injuries and the transmission of foot fungus." We conclude that this legitimate government interest bars any constitutional claim based on the dining hall policy. The defendants are entitled to summary judgment on this issue.

### 10. *Lack of Education/Work Opportunities*

Ramsukh also claims that detainees are denied educational and work opportunities. Defendants respond that detainees at APJ can participate in a GED program, and that detainees may request to be assigned to a job after a certain period of detainment. According to defendants, Ramsukh's stay at APJ was shorter than the minimum stay required before an inmate can request a job. Moreover, defendants contend that Ramsukh never requested a job.

The Constitution does not mandate educational, rehabilitative, or vocational programs. *See Beck v. Lynaugh,* 842 F.2d 759, 762 (5th Cir.1988) (citing *Newman v. State of Alabama,* 559 F.2d 283, 292 (5th Cir.1977), *rev'd in part on other grounds sub nom., Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)). Further, a plaintiff has no right to a job in the prison or to any particular job assignment. *See Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir.1986); *Garza v. Miller,* 688 F.2d 480, 485 (7th Cir.1982); *Fuller v. Rich,* 925 F.Supp. 459, 462 (E.D.Tex.1995). Given that detainees do not have a right to education or employment while housed at APJ, Ramsukh has failed to show that the lack of educational and employment opportunities afforded to INS detainees violates his constitutional rights and we must dismiss this claim.

### 11. *First Amendment Claim*

Ramsukh alleges that, while at APJ, he was not permitted to receive his Playboy magazine. In the course of his

discussion of Ramsukh's first amendment claim, the magistrate concludes that the defendants have not given a reason for their restriction on publications. The defendants did however purport to give a reason for their ban on sexually explicit material in their motion for summary judgment. We therefore will briefly address the defendants' argument that the ban on sexually explicit material is necessary for prison security.

The First Amendment rights afforded pretrial detainees are the same as those afforded convicted inmates. *See Bell*, 441 U.S. at 545, 99 S.Ct. at 1877. Before a prison may infringe on the First Amendment rights of its inmates, it must show that any restriction on prisoners first amendment rights is reasonably related to a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Here, APJ has a policy in place that prevents inmates from accessing sexually explicit material in the interest of reducing violence and sexual assaults. To determine whether the jail's policy of excluding sexually explicit material "is reasonably related to legitimate penological interests," and therefore valid, we must consider four factors: (1) whether there is a valid, rational connection between the policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether the impact of accommodating the asserted constitutional right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources generally; and (4) whether the policy is an "exaggerated response" to the jail's concerns. *See id.* at 89–90, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64. The defendants have proffered a reason for the restriction on sexually explicit material but have not shown that there is an alternative means of exercising the right, whether impact of accommodation will have a negative impact on guards and prison resources, nor shown that there outright ban

is not an exaggerated response. Moreover, they have simply denied that inmates are not allowed to obtain political and religious publications. Given that the parties dispute whether INS detainees are denied access to political and religious materials, and that defendants have not given a legally sufficient rationale for their ban on sexually explicit material, we conclude that summary judgment is not appropriate as to Ramsukh's First Amendment claims.

**12. *Claim Based on Deprivation of Mattress***

Ramsukh alleges that during his first thirty-six hours at APJ, he was confined to a cell with no mattress. "[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare* 74 F.3d at 650. A mattress is a basic human need, which must be provided to a detainee.

Several federal courts have found that forcing a pretrial detainee to sleep without a mattress, or on the floor on a mattress, for even a short period of time, constitutes a violation of the Fourteenth Amendment. *See, e.g., Thompson v. City of Los Angeles*, 885 F.2d 1439, 1449 (9th Cir.1989) (valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights); *Lyons v. Powell*, 838 F.2d 28 (1st Cir.1988) (pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process); *Anela v. Wildwood*, 790 F.2d 1063, 1067 (3d Cir.1986) (allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim); *Lareau v. Manson*, 651 F.2d 96, 105 (2d Cir.1981) (prison's use of floor mattresses for pretrial detainees unconstitutional "without regard to the number of days for which a prisoner is so confined"); *Martino v. Carey*, 563 F.Supp. 984, 1002 (D.Or.1983) (fact

that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights); *Vazquez v. Gray*, 523 F.Supp. 1359, 1365 (S.D.N.Y.1981) (use of floor mattresses for pretrial detainees unconstitutional). These cases are instructive. Ramsukh is not a convicted inmate. Rather, he is a detainee, awaiting removal from the United States. He is thus entitled to be free from punishment under the due process clause.

Ramsukh's allegation that he was not provided with a mattress constitutes a cognizable Fourteenth Amendment claim. The defendants may escape liability, under the doctrine of qualified immunity, however, if their actions are considered reasonable. Defendants assert that during initial processing, detainees are confined to a cell without a mattress, but are given a mattress each night. This contention is in direct contradiction to Ramsukh's allegations. We find that there is a genuine issue of material fact remaining as to whether defendants' actions were reasonable. As such, the defendants are not entitled to summary judgment as to Ramsukh's claim for deprivation of a mattress.

### Specific Acts and Omissions

Ramsukh also alleges that two specific incidents deprived him of his constitutional rights. Again, to prevail on a section 1983 claim against an individual defendant, a pretrial detainee must show that the defendant "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650.

### 1. Denial of a Meal on 31 July 1998[10]

■ Ramsukh alleges that he was denied a meal on one occasion because he did not wear shoes to the dining hall. APJ has a policy requiring detainees and in-

mates to wear footwear to the dining hall. According to Ramsukh, on 31 July 1998, he arrived in the dining hall without shoes and Officer Jones told him to put on shoes or forego his meal. Apparently, after Ramsukh informed Austin that he had no shoes, Austin took Ramsukh to a holding cell and Ramsukh missed his meal.

The Fifth Circuit has instructed that the fact that an inmate misses one meal does not necessarily implicate the inmates's constitutional rights. *See Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir.1999); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986); *see also Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998) ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period."). In this case, Ramsukh alleges that he missed one mid-day meal. He does not state any additional facts that would indicate that he faced a substantial risk of harm because of the incident. Accordingly, we find that plaintiff has failed to state a cognizable claim against defendants arising from his deprivation of one meal.

### 2. Allegation of Physical Mishandling on 31 July 1998

■ Ramsukh alleges that Austin physically mishandled while taking him to a holding cell after he would not put on shoes in the dining hall. According to Ramsukh, Austin "grabb[ed] him by the shirt and begin [sic] pushing him to the front where petitioner was placed in a holding cell." Pl.'s Amended Compl. at 7. As stated previously, to state a claim for a violation of a detainees due process rights based on a specific act or omission, the detainee must prove that the defendant acted with subjective knowledge of a substantial risk of serious harm but acted with deliberate indifference to that risk. *See Hare*, 74 F.3d at 647–50 (adopting a sub-

---

10. The magistrate characterized this claim as one based on lack of shoes. We disagree with this assessment. Ramsukh challenges the fact that he was denied a meal, not that he lacked a pair of shoes.

jective deliberate indifference standard in cases challenging specific acts and omissions on the part of prison officials). Although disquieting, the facts as alleged by Ramsukh do not rise to the level of deliberate indifference. Even if Austin did grab Ramsukh's shirt and force him into the cell, these allegations do not show a risk of serious harm. Accordingly, the defendants are entitled to summary judgment on plaintiff's claim for physical mishandling arising from the 31 July 1998 incident.

## C. Liability of Each Defendant

### 1. *Official Capacity Suit Against Sheriff's Department*

Although Ramsukh does not specify whether he is suing the defendants in their individual or official capacities, we interpret his complaint to incorporate a cause of action for both. Sheriff Belt may be sued in his official capacity because under Louisiana law, administration of a parish jail, including the obligations to provide medical care for, feed and clothe the prisoners, is the province of the Sheriff of the parish. *See* La.Rev.Stat.Ann. § 15:704 (providing that Sheriff is the "keeper" of the parish jail). Sheriffs in Louisiana are considered final policy makers with respect to management of the jail. *See id.* ("Each sheriff shall be the keeper of the public jail of his parish...."); *Jones,* 4 F.Supp.2d at 613; *see also Langley v. City of Monroe,* 582 So.2d 367, 368 (La.App.2d Cir.1991) (explaining that Sheriff is the proper defendant in an official capacity suit challenging conditions at parish prison).

While jail officials in their individual capacities may be held liable for acts or omissions causing constitutional deprivations if they acted with subjective deliberate indifference, more is required to establish liability on the part of the governmental entity that employs these officials. *See Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995).

Under section 1983, where a plaintiff challenges the general conditions of confinement, we assume, by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation. *See Flores v. County of Hardeman,* 124 F.3d 736, 738 (5th Cir.1997); *Scott,* 114 F.3d at 53. The inquiry becomes whether the conditions are reasonably related to a legitimate government purpose. *See Bell,* 441 U.S. at 539, 99 S.Ct. at 1874,

Since we are to assume that the Sheriff's intended the conditions at APJ, our sole inquiry is whether the conditions are reasonably related to a legitimate government objective. The defendants have not proffered any legitimate government objective that justifies the conditions of which Ramsukh complains. The court finds that Ramsukh has raised genuine issues of material fact as to whether the Sheriff's policy of housing the INS detainees in an overcrowded, unsanitary unit lacking adequate opportunity for recreation, adequate meals and clothing, and emergency exits was reasonably related to a legitimate governmental purpose.

As stated above, the Sheriff alone has the responsibility to maintain his parish jail. Neither the Warden nor any of the other defendants are under any such a duty. Ramsukh's suit against the remaining individual defendants in their official capacity is therefore DISMISSED.

### 2. *Avoyelles Medical Department*

Ramsukh names the Avoyelles Medical Department as a defendant. Ramsukh alleges that he complained of the lack of adequate medical and dental care at APJ to the Medical Department to no avail. Ramsukh also contends that the "medical staff of Avoyelles Parish Jail refuse to provide dental and medical treatment." As stated previously the Sheriff is the official ultimately responsible for care of detainees in APJ. *See Jones,* 4 F.Supp.2d at 613. The Sheriff has the duty to provide adequate medical care.

The Medical Department at APJ is merely an arm of the Sheriff's office. Although Ramsukh may have a legitimate claim for denial of medical and dental care, the Sheriff in his official capacity, and not the Medical Department is the appropriate entity to name as a defendant. Plaintiff's claims against the Medical Department are therefore DISMISSED.

### 3. *Individual Capacity Suit Against Warden Thibodeaux and Sheriff Belt*

 To state a cause of action under section 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir.1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). Although a supervisor cannot be held liable on the basis of respondeat superior, "[a] supervisory official may be held liable under § 1983 for the wrongful acts of a subordinate when the supervisory official breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976)).

 In his complaint, Ramsukh contends that he informed Warden Thibodeaux and Sheriff Belt of his grievances concerning the INS detainment unit. Ramsukh has attached a copy of a letter complaining of the conditions at APJ addressed to Thibodeaux and Sheriff Belt to his pleadings. According to Ramsukh he received no response from either of the recipients. The letters demonstrate that Thibodeaux and Belt were on notice of some of Ramsukh's complaints. We therefore disagree with the defendants' argument that Arthur's claim against the Thibodeaux and Belt must fail because it is based on respondeat superior. Rather, Ramsukh's claim is based on Thibodeaux's and Belt's direct role in allowing the alleged constitutional deprivations to occur and continue. We conclude that this is sufficient to create a material fact as to whether Thibodeaux and Belt were personally involved in the deprivations of which Ramsukh complains to the extent they were aware of such deprivations.

The letter sent to Thibodeaux and Belt indicates that they were aware of the lack of recreation, denial of certain publications, lack of grievance system, lack of name tags on APJ personnel, harassment by the officers, flooding, and the general condition of the dorm. There is no evidence, however, that Belt and Thibodeaux had any knowledge of the lack of dental care and medical care, exposure to second hand smoke, lack of adequate clothing and towels, and the fact that Ramsukh slept without a mattress during the first thirty-six hours of his confinement. Accordingly, Thibodeaux and Belt are entitled to dismissal of these claims against them.

The final question that we must address is whether Belt and Thibodeaux are entitled to qualified immunity. We have already determined that Ramsukh has shown that there is a genuine issue of material fact as to whether his clearly established constitutional rights have been violated on the specified issues. Our next inquiry is whether Belt's and Thibodeaux's actions can be considered "objectively reasonable" in light of clearly established law. *See Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir.1998). Because there exists a factual dispute as to whether Ramsukh has shown a violation of his constitutional rights, we cannot, as yet, determine as a matter of law whether defendants' acts were reasonable. Defendants do not even attempt to argue that they acted reasonably. Rather, they focus their arguments on disputing that any constitutional violation ever occurred. We conclude that Belt and Thibodeaux are not entitled to summary judgment on the grounds of qualified immunity as to Ramsukh's claims for the general conditions of confinement in the

 

INS detainment unit,[11] and inadequate recreation.

### 4. *Captain Jones*

Ramsukh names Jones as a defendant for his purported threatening and verbal abuse of Ramsukh and other INS detainees. Ramsukh's complaint contains no other factual allegations involving Jones. Because we determine that Ramsukh does not have a cognizable claim based on threats and verbal abuse, we DISMISS Jones from this lawsuit. *See* discussion *supra.*

### 5. *Lieutenant Austin*

According to Ramsukh, Austin physically mishandled and constantly abused plaintiff and the other INS detainees. We conclude that Ramsukh has not stated a claim based on physical and verbal abuse. *See* discussion *supra.* Ramsukh's complaint includes no other allegations concerning Austin. Accordingly, Ramsukh's complaint against Austin is also DISMISSED.

### III. Conclusion

For the foregoing reasons, we conclude that Ramsukh has stated a claim against defendants Belt and Thibodeaux in their individual capacities for the general conditions of confinement at APJ, including overcrowding, lack of recreation, lack of adequate sanitation, lack of adequate heat and ventilation, and violation of plaintiff's First Amendment rights and thus DENY Belt and Thibodeaux's motion for summary judgment on those claims. The remaining claims against Belt and Thibodeaux are DISMISSED. The official capacity suit against the Sheriff is permitted to go forward, however. Ramsukh has shown a genuine issue of material fact exists as to the liability of the Sheriff in his official capacity with respect to his claims for overcrowding, denial of publications, and the general physical conditions of the INS detainment unit. The remaining claims against the Sheriff's in his official capacity are dismissed.

We disagree with the magistrate's report and recommendation as to the remaining defendants. Ramsukh's complaint against the Medical Department at APJ is DISMISSED as it is repetitive to sue both the Medical Department and the Sheriff in his official capacity. Finally, defendants Jones and Jacobs are entitled to be DISMISSED from this lawsuit in both their official and individual capacities because Ramsukh has not shown that they deprived him of his constitutional rights.

---

11. The general conditions of confinement include Ramsukh's allegations for overcrowding, lack of sanitation, and inadequate heating and ventilation.