United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 19, 2007**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 05-30929

---

LENWARD P. HEBERT; DARNELL A. HEBERT,

Plaintiffs-Appellees,

VERSUS

RANDY J. MAXWELL, etc. et al,

Defendants

RANDY J. MAXWELL,
SHERIFF OF CONCORDIA PARISH,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AND AS KEEPER OF CONCORDIA PARISH JAIL;
JIM BOYD,
DEPUTY OF CONCORDIA PARISH SHERIFF'S DEPARTMENT,
IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY,

Defendants-Appellants

---

Appeal from the United States District Court
for the Western District of Louisiana
m 1:03-CV-1739

---

Before SMITH, BENAVIDES, and PRADO,
Circuit Judges.

JERRY E. SMITH, Circuit Judge.[*]

After being arrested for criminal trespass and spending about forty-eight hours in jail, Lenward Hebert brought a 42 U.S.C. § 1983 action for false arrest, false imprisonment, denial of bail, and unconsititutional conditions of confinement. The district court denied the claim of qualified immunity made by the defendants, Sheriff Randy Maxwell and his deputy, Jim Boyd. The defendants appeal the denial of qualified immunity for false arrest and conditions of confinement, and we affirm.

I.
After the Concordia Parish Sheriff's office received several calls about a suspicious blue pickup, Boyd came upon Hebert sitting inside his blue pickup, which was parked off the side of the highway in a grassy area in front of a farm. Boyd approached Hebert and asked who he was and what he was doing. Hebert initially indicated that he was a surveyor, but he soon admitted that he was a private investigator. Hebert refused to provide information about whom he was investigating, although he did provide extensive identification, including a valid driver's license, a Louisiana private investigator's license, a Louisiana permit for tinted windows, vehicle registration, a veteran's identification card, and his scuba diving certification.

Boyd called Gene Tiffee, the landowner, to the scene. Tiffee signed a statement that He-

bert was parked "on Gene Tiffee['s] land at the intersection of La. 129 & 907 next to his cow pen." Hebert claims that he offered to move his truck and leave the scene but was precluded from doing so. Boyd arrested Hebert for criminal trespass and later testified that Maxwell told him to arrest Hebert and hold him until they "found out more information."

Hebert was taken to the parish jail Saturday afternoon. He was given two bedsheets, two towels, and two hand towels, was permitted to call his wife, and was placed in a holding cell called the "tank." Hebert told his wife that he had been arrested but that she should not come to the jail because he would not be let out until Monday. Although the bond for criminal trespass is preset on a bond schedule, Hebert did not pay the bond until Monday. Maxwell had placed a "hold" on Hebert until Monday and testified that the "hold" was maintained until they could "find out who [Hebert] was." On Monday, Hebert was taken before a judge, posted bond, and was released.

Hebert complains that the jail conditions were inhumane. He asserts that the cell reeked of human waste, which was strewn across the walls and the floor. The "tank" contained no bed, only a hard wooden bench. He claims the overhead lights were never turned off, that he was not permitted to shower or exercise, and that he was not given soap, toilet paper, toothbrush, or toothpaste until shortly before release. Although he received three meals a day, he urges that the food was cold, that it had been sitting out for a considerable time before being served, and that the only edible item was a biscuit. Finally, he alleges that clean cells with mattresses were empty and available in the jail.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## II.

We have jurisdiction to review the district court's denial of summary judgment on the basis of qualified immunity in this case because it comes within the collateral order doctrine. Where the denial of qualified immunity is based on an issue of law, it is an appealable "final order" within the meaning of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Whether a fact that is in dispute is "material" is a legal issue over which we have jurisdiction. *Davis ex rel McCully v. City of N. Richland Hills*, 406 F.3d 375, 379 (5th Cir. 2005). We determine whether an issue of the materiality of disputed facts is properly raised on appeal by reference to the nature of the legal argument advanced in the appellant's brief. *Id.*

Defendants argue that the uncontested facts demonstrate that there was probable cause to arrest Hebert. They also reason that even if the plaintiff's allegations as to the condition of the "tank" are true, they do not rise to the level of a violation of a clear statutory or constitutional right. These arguments address the materiality of the facts the district court found to be in dispute, raising legal issues that this court may review on interlocutory appeal.

## III.

Defendants contend that the district court erred in denying qualified immunity on the claim of false arrest. We review the refusal to dismiss Hebert's claim on the basis of qualified immunity *de novo*. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003).

Once a public official has raised the defense of qualified immunity, the burden rests on the plaintiff to rebut it. *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). On a motion for summary judgment, the disputed facts to which the plaintiff points must be sufficient, if his version is accepted, for a reasonable trier of fact to determine (1) that the defendants violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992). The inquiry into reasonableness asks "whether '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.'" *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If reasonable public officials could differ as to whether the defendants' actions were lawful, defendants are entitled to immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangierei v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). The test for probable cause is whether the officer, at the time of arrest, "had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Id*. (citing *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)). "Police officers who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity." *Id.* at 1017 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

In *Devenpeck v. Alford*, 543 U.S. 146 (2004), the Court considered a claim of false arrest under the Fourth Amendment and concluded that a subjective analysis of the officer's state of mind is irrelevant to the analysis. *Id.* at 153. The only question is whether, given the facts known to the officer, he had probable cause to arrest the defendant for a crime. *Id.* Applying the *Devenpeck* standard in the

qualified immunity context, the inquiry is whether, given the facts known to Boyd, he could have reasonably believed he had probable cause to arrest Hebert for any crime.

Boyd and Maxwell point to three statutes under which Hebert could have been arrested: Criminal Trespass, LA. REV. STAT. 14:63 (1997) (amended 2003); Parking upon the Highway Shoulder, LA. REV. STAT. 32:296(a) (2002); and Blocking of Private Driveways, Highways and Department Rights of Way, LA. REV. STAT. 32:143.1 (2002). The Criminal Trespass statute, as encoded at the time of Hebert's arrest, provided as follows:

> B. No person shall intentionally enter immovable property owned by another:
>
> > (1) When he knows his entry is unauthorized, or
> >
> > (2) Under circumstances where he reasonably should know his entry is unauthorized.
> >
> > C(2) It shall be an affirmative defense to a prosecution pursuant to Subsection B(2) to show that property was not adequately posted in accordance with Subsections D or E, and F of this Section.
> > . . .
>
> E. In order for immovable property other than forest land to be adequately posted . . . the owner . . . shall post the property by . . .
>
> > (3) Constructing a fence around the area to be posted . . . .

LA. REV. STAT. 14:63 (1997) (amended 2003).

To convict a defendant of criminal trespass under this statute, the state must "prove an unauthorized intentional entry onto immovable property owned by another under circumstances where the person entering the property knows or reasonably should know the entry is unauthorized." *State v. Davis*, 540 So. 2d 600, 602 (La. App. 5th Cir. 1999). Boyd can point to no facts, other than reports of "suspicious activity," that are entirely unrelated to Tiffee's property, to suggest that Hebert had the intent to enter property belonging to another. Similarly, Boyd has pointed to no facts suggesting Hebert had reason to believe parking on the highway side of Tiffee's fence was unauthorized. Without any facts suggesting intent or knowledge, Boyd could not have had probable cause to believe Hebert was committing the crime of criminal trespass.

The other two statutes are similarly unavailing. One refers specifically to parking "unattended" vehicles on a state highway shoulder. LA. REV. STAT. 32:296(a) (2002). Neither party contends that Hebert's pickup was unattended. The other statute provides authority for an officer to tow, or to require a driver to move, a vehicle that blocks a private driveway. This section only authorizes an officer to require the operator of the vehicle to move it or to pay one dollar plus towing costs for the vehicle; it is not grounds for arrest. Even if either of these statutes were a ground for arrest, Louisiana law provides that when a person is arrested for a violation of the Louisiana Highway Regulatory Act, he "shall be released on his own recognizance upon signing the promise to appear section of the traffic citation." LA. REV. STAT. 32:411.1(A)(4) (2002).

Thus these two statutes, even if they were violated, are not grounds for imprisonment.

Because Boyd could not have believed he had probable cause to arrest Hebert without facts relating to Hebert's intent to trespass or his knowledge that he was trespassing, the defense of qualified immunity was properly denied.

## IV.

Defendants urge that the district court erred in denying qualified immunity on the claim of unconstitutional conditions of confinement. Section 1983 liability for alleged violations of detainee's rights can be premised on two theories: (1) that the conditions of confinement violated the detainee's rights or (2) that episodic acts or omissions of officials violated those rights. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). Hebert complains that he was not provided a bed, that the meals were inadequate, that he lacked basic supplies like toilet paper and toothpaste, and that the room was filthy. These allegations amount to a "constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement," so this case presents a claim of unconstitutional conditions of confinement. *Id.* (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)). In a condition of confinement case, the municipality is considered to have intended the alleged deprivation, and a constitutional violation occurs where we determine that "the condition of confinement is not related to a legitimate, non-punitive governmental objective." *Id.*

We take the facts in the light most favorable to Hebert. He alleges that he was forced to sleep on a wooden plank while the county had other cells with mattresses available. The government's stated objective was to "find out who [Hebert] was." In the absence of a compelling governmental interest, housing a detainee in a room without sleeping accommoda-tions, when other available rooms had sleeping facilities, is enough to survive a summary judgment motion based on qualified immunity.[1]

The order denying qualified immunity is AFFIRMED, and this matter is REMANDED for further proceedings. We express no view on the ultimate merits of this case.

---

[1] Some courts have held that forcing a detainee to sleep without a mattress, even for as little as thirty-six hours, states a due process violation. *See Oladipopo v. Austin*, 104 F. Supp. 2d 626 (W.D. La. 2000) (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1449 (9th Cir. 1989); *Anela v. Wildwood*, 790 F.2d 1063, 1069 (3d Cir. 1986)); *but see Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) ("[The detainee] has cited no case holding that the Constitution requires elevated beds for prisoners, and we know of no source for such a right."). We do not need to address this specific question, because in this case the governmental unit had mattresses available but refused to provide one to Hebert.